MARY ISAAC, as Administratrix, etc., of NELSON ISAAC, Deceased, Appellant, *v.* TOWN OF QUEENSBURY and Another, Respondents.

LEONARD H. GUNNING, Appellant, *v.* TOWN OF QUEENSBURY and Another, Respondents.

FRANCIS H. DeROSIA, Appellant, *v.* TOWN OF QUEENSBURY and Another, Respondents.

DESMOND G. LAPOINT, Appellant, *v.* TOWN OF QUEENSBURY and Another, Respondents.

Third Department, March 13, 1935.

*Chambers & Finn* [*Walter A. Chambers* and *Willard A. White* of counsel], for the appellants.

*Beecher S. Clother* [*J. Edward Singleton* of counsel], for the respondent Town of Queensbury.

*Joseph Rosch* [*Alfred D. Kelly* of counsel], for the respondent Delaware and Hudson Railroad Corporation.

BLISS, J. Warren street, in the town of Queensbury, Warren county, crossed the Lake George branch of the Delaware and Hudson railroad at grade at a point just outside of the city limits of the city of Glens Falls. In a proceeding begun in 1928, to which the defendants were parties, an order was made directing the elimination of this grade crossing by the closing of the then existing highway and diverting traffic by the construction of a new highway and undercrossing at a point about 430 feet northwesterly of the then existing grade crossing. The construction of this new underpass and the relocation of the highway were performed by the defendant railroad corporation and on September 3, 1931, the Public Service Commission made an order approving the completion of

the work.   On September 18, 1931, the State Highway Commissioner made and filed in his own office an official order discontinuing as a county highway the portions of the former highway which crossed at grade and turning the same over to the town of Queensbury for future maintenance and repair.   When the project was completed the former grade crossing was completely closed.   Fences had been erected by the railroad under the elimination plans along its right-of-way.   There was thus left on each side of this grade crossing a dead-end street.   On the side toward the city of Glens Falls the city line was about eighty feet from the new right-of-way fence erected by the railroad across the dead-end of Warren street. There was left about eighty feet of this highway in the town of Queensbury and the remainder of the *cul-de-sac* was in the city of Glens Falls.   On the evening of January 31, 1932, the plaintiff De Rosia was driving a Chevrolet car owned by the plaintiff La Point, and the plaintiff Gunning and the decedent Nelson Isaac were riding with him out along Warren street in the city of Glens Falls.   They failed to bear left onto the new diversion highway and continued on down Warren street to the dead-end where they ran into the fence which the railroad had erected across the end of the street.   La Point's car was damaged, De Rosia and Gunning were injured and Isaac was killed.

As to negligence, it is sufficient for our purpose to state that there was a question of fact against whatever municipality was charged with the maintenance of the highway from the point where the new highway left Warren street down to the dead-end, due to the failure to erect proper warning signs showing the relocation of this highway.   One reflector erected by the town at the end of this *cul-de-sac* would, in all probability, have averted this accident.

The court below nonsuited the plaintiffs at the close of their case, holding that the defendant railroad had no responsibility for the maintenance of this highway and that it had been ordered by the Public Service Commission to erect the fence and with that its obligation ended; and also holding that there was no liability on the part of the town of Queensbury because the State had never turned this highway back to the town for maintenance and that it was still in charge of the State at the time of the accident.

There can be no doubt as to the correctness of this ruling in so far as the defendant railroad is concerned.   It has in this instance done only that which it was ordered to do by the Public Service Commission acting in pursuance of the Grade Crossing Elimination Act. The plans approved by the Commission and ordered to be followed by the railroad in the construction called for the erection of this fence.   There was no discretion on the part of the railroad as to

location or kind of fence. Therefore, liability may not be predicated upon the kind or location of the fence. Nor was there any liability on the part of the railroad for failure to erect warning signs advising travelers of the closing of the old highway and the diversion of traffic over the new one. Such signs, if erected, would, to be effective, of necessity have had to be placed along the old and new highways at various points far removed from the lands of the defendant railroad. The railroad had no right and was under no duty to erect such signs. The orders and judgments should be affirmed as to the railroad.

The town of Queensbury was a party to the original proceeding instituted for the elimination of this grade crossing in which the order of elimination was made. It knew that the work of elimination was in progress. The final order of approval of this work was made several months before the accident. The order of the Superintendent of Public Works returning the dead-end sections to the town for maintenance was likewise made several months before the accident. There is no proof that notice of this latter order was ever given to the officials of the town. However, State maintenance had ceased and the work of elimination, including the construction of the fence across the highway, was finished and the fence had remained there for several months before the accident. It stood there during that period of the year when the State was not liable for damages suffered by any person from defects in the highway and when such liability was on the town. (Highway Law, §§ 74 and 176.) This condition had existed for a sufficient length of time to make the question of constructive notice to the town of the danger at least an issue of fact. The Highway Law provides in section 181-a that upon the completion of the work of a grade crossing elimination, a portion of the State or county highway which no longer serves a useful purpose as a part of the highway " may cease to be maintained by the department of public works through the superintendent of public works, and *shall* revert to the jurisdiction of the town." This reversion to the jurisdiction of the town is mandatory and, so far as the statute itself is concerned, no order of the State Superintendent of Public Works turning these dead-end sections back to the town for maintenance was necessary. But even if we assume that this section of the highway was still under the jurisdiction of the State for purposes of maintenance, the State would not be liable for damages in this case and the liability would remain upon the town because the accident happened between the fifteenth day of November and the first day of May following, during which period of the year liability for damages is

by statute placed upon the town. (Highway Law, § 176.) The plaintiffs established a *prima facie* cause of action as to the defendant town of Queensbury and were entitled to have it submitted to the jury.

The orders and judgments dismissing complaints as to the defendant railroad should be affirmed, with costs, and the orders and judgments dismissing complaints as to the town of Queensbury should be reversed and a new trial granted, with costs to the appellants in one action to abide the event.

RHODES and McNAMEE, JJ., concur; HILL, P. J., and CRAPSER, J., concur in the affirmance of the judgments dismissing the complaints as against the Delaware and Hudson Railroad Corporation, and dissent to the reversal as against the defendant town of Queensbury, with an opinion by HILL, P. J., in which CRAPSER, J., concurs.

HILL, P. J. I favor an affirmance.

If the facts show negligence, it is that of the State, its officers and agents, and not of the town or railroad company. The decedent and his two companions started easterly from Glens Falls over State highway No. 656 to Hudson Falls. Formerly the course was substantially direct, crossing the defendant railroad's right-of-way. An overhead crossing at a new location had been erected shortly before the accident. This necessitated a relocation of a part of road No. 656, with a sharp curve to the north about 1,300 feet easterly from the railroad right-of-way. A substantial fence had been erected by direction of the State along the railroad lands and across the former course of the highway, thus making a *cul-de-sac*. The State officials, by an order to which no publicity was given, purported to discontinue as a State highway the portion thereof which was in the town of Queensbury, a distance of about 800 feet, and it was " turned over to the town of Queensbury, Warren county, for future maintenance and repair." The State failed to erect signs or markers that would warn these plaintiffs and plaintiffs' intestate of the change and of the peril which would confront them if they continued in a direct easterly line along the former course of the road. Because of this failure, these travelers, desiring to go along the State highway, left its new course and entered the *cul-de-sac*, striking the substantial barrier erected at the railroad right-of-way. The curve was in the State highway, and warnings, to be adequate and useful, should have been placed along its course. No officer of the town knew that the State had secretly " turned over " a portion of this *cul-de-sac* for town maintenance and repair.

The accident was occasioned because of the failure of the State officials to warn travelers of the curve in the State highway and the danger of proceeding along the old road.

CRAPSER, J., concurs.

Orders and judgments dismissing complaints as to the defendant Delaware and Hudson Railroad Corporation unanimously affirmed, with costs. Orders and judgments dismissing complaints as to the defendant Town of Queensbury reversed on the law and facts, and new trial granted, with costs to the appellants, in one action, to abide the event.