MARY ISAAC, as Administratrix, etc., of NELSON ISAAC, Deceased, Respondent, *v.* TOWN OF QUEENSBURY, Appellant.

LEONARD H. GUNNING, Respondent, *v.* TOWN OF QUEENSBURY, Appellant.

FRANCIS H. DEROSIA, Respondent, *v.* TOWN OF QUEENSBURY, Appellant.

DESMOND G. LAPOINT, Respondent, *v.* TOWN OF QUEENSBURY, Appellant.

Third Department, April 29, 1936.

*Beecher S. Clother [J. Edward Singleton* of counsel], for the appellant.

*Chambers & Finn [Wal er A. Chambers* and *Willard A. White],* for the respondents.

HEFFERNAN, J. For many years the main highway leading from the city of Glens Falls easterly to the village of Hudson Falls was a town highway of the appellant town of Queensbury. Later this highway was improved and reconstructed by financial aid from the State of New York and on December 13, 1908, it was accepted by the State as a county highway and early in 1909 the State took over its maintenance. Thereupon it ceased to be a part of the highway system of appellant. The period of time for which the State was responsible for the maintenance of this highway is the principal question for determination here.

About 100 feet easterly of the easterly boundary of the city of Glens Falls and in the town of Queensbury this highway was crossed at grade by the tracks of the Delaware and Hudson Railroad Corporation. On December 13, 1928, the Public Service Commission of the State of New York issued an order eliminating the grade crossing. The order provided that the crossing should be eliminated by closing the existing street between the property lines of the railroad corporation and by the construction of a new street and a new undercrossing of the railroad to be located about 430 feet northwesterly of the old crossing. This determination required the construction of a new section of highway for a distance of about 2,070 feet to the north of the location of the old highway. The new construction began at a point about 720 feet easterly from the old railroad crossing and continued from there westerly to the city of Glens Falls for a distance of about 900 feet. The order also required the erection of a fence by the Delaware and Hudson Railroad Corporation along the right of way of the railroad tracks at a point where the highway formerly crossed the tracks. The railroad company complied with this order. The fence on the westerly site of the railroad right of way was erected at a point about 1,150 feet easterly from where the westerly end of the new street joined the old highway.

About August 25, 1931, the elimination project was completed and accepted by the State.

An order was made by the Commissioner of Highways in the Department of Public Works discontinuing the old section of the former State highway extending from the city limits easterly to where the old grade crossing had been and from there on to a point where the old highway merged with the new construction. This order is dated September 18, 1931, but the record is silent as to when it was actually signed and filed. A copy of this order was served upon the superintendent of highways of appellant town on the 19th of March, 1932.

It is undisputed that there were no signs or warning signals at the junction of the two highways indicating that the old highway had been discontinued across the railroad crossing. On the night of January 31, 1932, respondent's intestate, Nelson Isaac, and the respondents Gunning and DeRosia were passengers in an automobile owned by the respondent LaPoint, and driven by the respondent DeRosia. The car was traveling between Glens Falls and Hudson Falls. As it approached the intersection of the old and new roads the car continued on the old highway and ran into the fence erected by the railroad company on the westerly line of its right-of-way. The car turned over and Isaac

received fatal injuries and the respondents DeRosia and Gunning received personal injuries.

Four actions were thereupon commenced against the town of Queensbury and the Delaware and Hudson Railroad Corporation, one to recover damages sustained by the administratrix of Isaac, one to recover for personal injuries sustained by Gunning, one to recover for personal injuries sustained by DeRosia, and one to recover damages to the automobile sustained by LaPoint. These actions were based on negligence and nuisance. All four were tried together at a term of the Supreme Court held in Warren county in January, 1934. At the close of the testimony the complaint in each action was dismissed as against the town and as against the railroad corporation. From the judgments of dismissal the respondents here appealed to this court where the dismissals as to the railroad corporation were unanimously affirmed and where the judgments of dismissal as to the town of Queensbury were reversed by a divided court on the law and facts and new trials granted. (244 App. Div. 14.)

The causes have been retried since and verdicts rendered in the four actions in favor of the respondents and against appellant. These judgments are the subjects of this review. On the second trial the learned trial justice submitted the causes to the jury in accordance with our decision on the former appeal. He regarded that decision, and very properly so, as the law of the case.

On the present appeal we do not regard the questions of negligence and contributory negligence as of primary importance. For the purpose of this discussion it is sufficient to say that the evidence presents clear questions of fact on these issues. Neither are we troubled by appellant's argument that the verdicts are excessive. The learned trial justice declined to set them aside on that ground and on the proof before us we would not be justified in interfering with his discretion.

On this appeal respondents seek to sustain the judgments on the theory that on the day of the accident and since the preceding September 18, 1931, the date of the order of the commissioner of highways discontinuing the portion of the old highway in question, such highway was part of the highway system of appellant and subject to its supervision and maintenance. Appellant contends that on the day in question the highway was maintained by the State and subject to its jurisdiction and that consequently no duty rested upon appellant.

Highways are divided generally into three classes, State, county and town. Those which are neither State nor county are town highways. (Highway Law, § 3.) A town is not liable for defects in a State highway, nor is it liable for the negligence of State officials.

Section 170 of the Highway Law, so far as material here, provides that the maintenance and repair of improved State and county highways in towns and incorporated villages shall be under the direct supervision and control of the Superintendent of Public Works and he shall be responsible therefor. The only duty which the statute imposes upon a town as to State and county highways within the town is to remove obstructions caused by snow and to keep the culverts and waterways free from snow and ice. (Highway Law, § 53.)

Section 176 of the Highway Law provides that the State shall not be liable for damages suffered by any person from defects in State and county highways, except between the first day of May and the fifteenth day of November on such highways as are maintained by the State under such system as the commissioner of highways may adopt pursuant to section 170 of the Highway Law. The same section of the law also provides that liability for injuries occurring between November fifteenth and May first "shall otherwise remain as now provided by law." Section 12-a of the Court of Claims Act supersedes the foregoing section in part and both statutes should be read together in order to determine in a given instance whether or not the State has waived its immunity. In the absence of statute neither town nor State is liable for injuries caused by defects in its highways.

On the former appeal it was apparently assumed in the prevailing opinion that appellant was liable because the accident occurred between November fifteenth and May first. No statute imposes liability upon a town for defects in State and county highways within its borders during the period of the year when the State does not assume responsibility therefor, and consequently a town is not answerable for damages sustained by reason of such defects. (*Graham* v. *Town of Urbana*, 235 App. Div. 275; affd., 261 N. Y. 592.) Under the law as it at present exists one injured between November fifteenth and May first because of a defective condition itself in a State or county highway is remediless. (*Hinds* v. *State of New York*, 144 Misc. 464; affd., 240 App. Div. 742; affd., 264 N. Y. 525.)

Unless the State had divested itself of jurisdiction over the highway in question the appellant cannot be held liable. The Superintendent of Public Works may not arbitrarily refuse to maintain a State or county highway. The law charges him with responsibility for care and maintenance and that responsibility cannot be evaded nor, except in two instances, specified in sections 181 and 181-a of the Highway Law, can it be disclaimed.

Section 181 provides that where the commission shall have determined upon the necessity of a change for the improvement of alignment or of dangerous conditions, it may proceed with such improvement. As to the part of the highway discontinued by reason of the change the statute reads: "The commission shall cease to maintain the section of highway discontinued upon the completion of the substituted section."

The language quoted is mandatory. There is no discretion lodged in the commission. It *must* cease to maintain the discontinued road when the new one is completed.

Section 181-a of the Highway Law provides: "Discontinuance of part of highway due to grade crossing elimination. Whenever, in the elimination of a grade crossing on a State or county highway, the same is affected by a side line or a new location, in accordance with the order of the Public Service Commission, and as a result thereof a portion of the State and county highway or highways no longer serves a useful purpose as a part of such system, the same, upon the completion of the elimination work, *may* cease to be maintained by the Department of Public Works through the Superintendent of Public Works, and shall revert to the jurisdiction of the town."

It is obvious that there is a marked change in the language used in section 181-a from that used in section 181. The former is discretionary; the latter is mandatory. Under section 181-a the change in jurisdiction from the State to the town is not imperative but rests in the discretion of the Superintendent of Public Works. He may or may not make the change. He is called upon to exercise his judgment and discretion. To warrant the conclusion that the State will no longer maintain the old road he must make a decision that it "no longer serves a useful purpose." Unquestionably in many instances the old road would continue to serve a useful purpose. Certainly the language used in the statute does not compel the Superintendent to absolutely discontinue the old road if, in his opinion, it is still useful.

It is apparent from the order dated September 18, 1931, that in the instant case the Superintendent of Public Works did attempt to discontinue the old road. The material part of that order is:

"Whereas, Section 181-a of the Highway Law provides that where in the reconstruction or repair of a State or County Highway, the location of a limited section thereof is changed for the improvement of alignment or the elimination of a dangerous condition, said limited section shall be discontinued and the State shall cease to maintain said section upon the completion of the substituted section; it is

" Ordered: That the limited section of County Highway No. 656, as reconstructed under Public Service Case No. 4696 first above described, is hereby discontinued as a section of said County Highway No. 656 and no further maintenance by the State shall be performed thereon."

No such provisions referred to in the order are found in section 181-a. They are contained in section 181. It should be borne in mind that the change in question was not made under section 181 for the purpose of securing better alignment, or to eliminate dangerous conditions. The change was made under section 181-a pursuant to an order of the Public Service Commission for the elimination of a grade crossing. The person who drafted the order failed to make the distinction between the two sections of the law. One is mandatory, the other permissive. Instead of complying with the permissive provisions of section 181-a the order is drawn in accordance with the mandatory provisions of section 181. It contains no determination by the Superintendent of Public Works that the old road no longer serves a useful purpose. Without such a finding the Superintendent could not discontinue. His authority is purely statutory. In making the order which he did he omitted to comply with the statute and his order is, therefore, void.

Even if we should assume that the order of the Superintendent were properly drawn it was not binding upon appellant until its officers had notice thereof. For many years the two officials of this town knew that this road was under the jurisdiction of the State Highway Department and that they had no authority over it and were charged with no duties in relation thereto. They had the right to rely on the fact that if they were called upon to reassume jurisdiction of the road they would have notice to that effect. Concededly no such notice was given them until March 19, 1932, nearly two months after the accident out of which these actions arose. Even if the order of discontinuance were actually made and filed on September 18, 1931, which is very questionable, appellant was not chargeable with notice thereof until its officials received actual notice thereof.

They were not chargeable by law with notice of the contents of a paper filed in the Department of Public Works. No court would take judicial notice of such a record, and certainly no individual or corporation is chargeable with such notice in the absence of proof of actual knowledge of the action taken. If the order of the Superintendent of Public Works had been brought to the attention of the town superintendent of highways he would have been placed on his guard, he would have known that the functions of the State relative to the road had ceased, he would have realized that the duty had devolved upon him to maintain the highway and to give

adequate warning to the traveling public of pitfalls existing thereon. The appellant was not liable for any defect in this highway unless it has been established that such defect was due to the negligence of the town superintendent of highways. (*Lynch* v. *Town of Rhinebeck*, 210 N. Y. 101.) There is no proof in the record which would indicate that the town superintendent of highways was negligent. Not until March 19, 1932, was he officially informed that the State had ceased to maintain the road. He had no jurisdiction over it until the completion of the new road, the discontinuance of the old and notice to him to that effect. While the statute under consideration is silent on the question of notice a fair and just construction of its provisions compels the conclusion that appellant was entitled to notice of the obligation which was about to be placed upon it before it can be made to respond in damages for failure to perform that obligation. The town superintendent of highways cannot be charged with negligence for failure to perform a duty of which he had no knowledge, for failure to assume an obligation of which he had no notice. He was not a party to the elimination proceeding and received no notice relative thereto. He was not bound by any notice received by the supervisor of the town. A town superintendent of highways is not the agent of the town but an independent public officer. (*Lynch* v. *Town of Rhinebeck, supra.*)

When a statute confers authority upon an administrative governmental agency to make an order affecting rights of persons or property, and no provision is made for notice, the court will require reasonable notice. (*Bank of North Wilkesboro* v. *Wilkesboro Hotel Co.*, 147 N. C. 594; 61 S. E. 570; *Pittsburg, C. & Y. R. Co.* v. *Moses*, 2 A. 188.)

The State having assumed jurisdiction over this road and having exercised such jurisdiction for many years, and no notice of the cessation of that jurisdiction having been given to appellant, it is our conclusion that such jurisdiction had not reverted from the State to the town on the date of the accident. Having no duties to perform with respect to this road at the time the causes of action arose, appellant is not answerable to these respondents. .

The judgments and orders appealed from should be reversed and the complaints dismissed, with costs in this court and in the court below.

HILL, P. J., and McNAMEE, J., concur; RHODES and BLISS, JJ., dissent.

Judgments and orders reversed on the law and facts, and the complaints dismissed, with costs in the courts below and with costs in one action in this court.