Argued November 19, 1929; affirmed January 14, 1930.

G. D. GATT *v.* T. M. HURLBURT, SHERIFF

(284 Pac. 172)

For appellant there was a brief and oral argument by *Mr. George S. Shepherd.*

For respondent there was a brief and oral argument by *Mr. V. V. Pendergrass.*

RAND, J. This is a suit to restrain the defendant as sheriff from executing a writ of executon which, pursuant to § 215, O. L., was issued to enforce a judgment rendered by the circuit court for Multnomah county in an ejectment action wherein the Security Savings and Trust company was plaintiff and G. D. Gatt, the plaintiff herein, and others were defendants. In that action the trial resulted in a verdict and judgment for the Security Savings and Trust company and upon appeal the judgment was affirmed in *Security Savings and Trust Co. v. Ogden,* 123 Or. 370 (261 P. 69). The writ in question directed the defendant as sheriff to deliver the possession of the real property described in the judgment to the Security Savings and Trust company.

The grounds alleged in the complaint as the basis for injunctive relief are that Gatt, in his answer in

the former action, alleged that he was the owner in fee by adverse possession of certain described premises; that no reply was filed in the action and no denial made of his allegation of ownership. Because of the Security Savings and Trust company's alleged failure in that action to deny these allegations of ownership, he now claims that, notwithstanding the judgment in that action adjudicating that the Security Savings and Trust company was entitled to the possession of the property, he is still entitled to assert and maintain ownership thereof. He also alleges in the complaint that the property which he now claims is not within the boundaries of the tract of land for the recovery of the possession of which the action was brought. He also alleges that the defendant as sheriff threatens to and will unless restrained deliver the possession of said property to the Security Savings and Trust company.

■ The objection now urged to the validity of the judgment rendered in the former action, because of his having alleged ownership in himself of the premises referred to and the corporation's failure to reply thereto, or make any denial thereof, was not urged in that case and has been referred to for the first time since the commencement of this suit and, as now made, it amounts only to a collateral attack upon the judgment. The judgment was rendered by a competent court having jurisdiction of the subject-matter of the action and of the parties. The settled rule in such case is that where a court has jurisdiction of the subject-matter and of the parties, its judgment can not be collaterally attacked on account of the existence or lack of existence of facts authorizing the rendition of the judgment, or because of any mere error of law or irregularity in the proceedings: *Morrill v. Morrill*, 20 Or. 96; *Schmid v. City of Portland*, 83 Or. 583 (163 P.

1159); *Bobell v. Wagenaar,* 106 Or. 232 (210 P. 711); *Shaveland v. Shaveland,* 112 Or. 173 (228 P. 1090); *Steiwer v. Steiwer,* 112 Or. 485 (230 P. 359).

Before considering plaintiff's main contention, it is proper to refer to plaintiff's allegations of threatened injury. The complaint alleges that the defendant as sheriff threatens to and will unless restrained place the Security Savings and Trust company in possession of plaintif's alleged property. There is no allegation in the complaint that the writ authorizes that to be done or that the defendant has done any act looking to that end. The writ directs the sheriff to place the Security Savings and Trust company in possession of the property described in the judgment and, if the defendant as sheriff does any act in excess of his authority to the injury of plaintiff, an action will lie to recover for the damages resulting therefrom. In the absence of some allegation that a writ duly issued and placed in the hands of an officer for execution is not authorized in law or violates some legal or equitable right of complaint, or that the officer has done some act in excess of the powers conferred, an injunction restraining such officer from executing the writ would be wholly unauthorized. The mere allegation that a sheriff to whom a writ of execution has been delivered threatens to do something in excess of his authority where nothing has been done by the sheriff to execute the writ is not sufficient to warrant the issuance of an injunction restraining him from executing the writ. If the law permitted that to be done upon a mere allegation that the officer threatens to do an unauthorized act in the execution of a writ which has been placed in his hands for service, then no judgment or decree could be enforced so long as the opposing party could obtain an injunction by alleging in his complaint that

the officer in the performance of his duty has threatened to do some unauthorized or illegal act. There is no pretense in this case that the writ was wrongfully issued or that the defendant has done any act in excess of his authority, and, hence, there is nothing alleged which would warrant a court of equity to restrain or interfere in the performance by defendant of his official duties under the writ.

■ This brings us to plaintiff's principal contention, the facts in respect to which are as follows: The Security Savings and Trust company is the owner of a tract of land bordering on the Willamette river within the corporate limits of the city of Portland and its ownership extends to the low water mark of the river. The premises contended for by plaintiff lie below the low water mark in front of the property owned by the Security Savings and Trust company and, hence, constitute a part of the bed of the river. Upon the argument here, Mr. Shepherd, the attorney for plaintiff, stated the controversy in these words: "Now the issues in the other case that was determined in this court were as to the low water mark of the Willamette river west to Macadam road. This controversy is between the low water mark of the Willamette river east to the navigable water." In other words, plaintiff contends in this suit that he can acquire title to the bed of the river below the low water mark and in front of the premises of the Security Savings and Trust company by adverse possession. And in his brief he asserts that plaintiff has an incorporeal hereditament by virtue of his title acquired by adverse possession to the bed of the river below the low water mark and the right to maintain thereon a landing place for boats. By section 1 of an act approved October 26, 1874, L. 1874, p. 77, the legislature of this state granted and

confirmed to the owners of the adjacent lands bordering upon the Willamette river the state's title "to any tide or overflowed lands upon said Willamette river." The complaint admits that the Security Savings and Trust company owns to the low water mark and that plaintiff's alleged premises lie between the low water mark and the navigable waters. It is settled law that "a grant of land adjacent to a navigable river, below the farthest point inland to which the neap tide flows, extends only to the meander lines of high tide." This rule is applicable to lands adjacent to the Willamette river at Portland. In *Hinman v. Warren*, 6 Or. 408, Mr. Justice McARTHUR, after quoting the principle just quoted above, said:

"* * * This is the rule laid down by the general government to guide its surveyors. It is of no consequence that the calls of the McClure patent place the north line between high and low water mark. In thus describing the land, the officers of the United States government acted without the authority of law, and it is well settled that an unauthorized act binds no one."

In the same case, in respect to the lands lying below the ordinary high water mark of the river and above the low water mark, the court said:

"* * * tide lands—those that are uncovered and covered by the ebb and flow of the sea—belong to the state of Oregon by virtue of its sovereignty. This doctrine is the clear result of the principle announced in all the cases from Pollard's *Lessoes v. Hagan*, 3 How. 230, to *Barney v. Keokuk*, 4 Otto, 324."

Upon the admission of this state into the Union, the state of Oregon acquired title to all of the lands lying between the ordinary high water mark and the low water mark of all navigable streams affected by the ebb and flow of the tide which are located within its

borders. It acquired these lands in its proprietary capacity and became the absolute owner of them and entitled to sell and dispose of them as it saw fit and, as we have seen, the lands bordering upon the Willamette river below high water mark and above low water mark were granted to the owners of the adjacent land. At the same time that this state was admitted into the Union it acquired title, not in a proprietary capacity but in its sovereign capacity, that is to say as trustee for the public, to all of the bed of navigable streams within its borders. These it could not sell or dispose of or grant the right to make any use of them which would impair or impede navigation. It could and did grant the right to the owners of the land lying above the low water mark to extend wharves between the low water mark and the navigable parts of the river, but this was wholly in aid of commerce and to afford access for the loading and unloading of cargoes, and the transportation of passengers, and other articles of commerce.

 Now, it must be obvious to every one that no person could acquire title by adverse possession to any submerged land lying between the low water mark of a navigable river and the navigable waters, for to do so would be to acquire title by adverse possession against the state. Hence, plaintiff's claim that he has acquired title by adverse possession to a part of the bed of the Willamette river lying below the low water mark and fronting on the property of the Security Savings and Trust company is untenable. The right to navigate these waters is the privilege of every one and the right is common in all and exclusive in no one.

 Plaintiff's contention that he is the owner of an incorporeal hereditament in the bed of the river below the low water mark can find no sanction in the

law. If any one has such right in that part of the bed of the river it could only be by virtue of its being appurtenant to the adjacent land lying above the low water mark. One of the accepted definitions of an incorporeal hereditament is:

"A right issuing out of a thing corporate (whether real or personal) or concerning or annexed to or exercisable within the same": 2 Bla. Com. 20; 80 Wis. 222; 1 Washb. P. P. 10.

It is clear that this supposed right of plaintiff to claim an incorporeal hereditament in that part of the bed of the river fronting on lands of another is not a right issuing out of a thing corporate and has nothing to which it could be annexed or within which it is exercisable. If any one possesses such right it is the Security Savings and Trust company, the owner of the land above the low water mark. That corporation, as riparian owner, has certain rights. Among them are the right of access to the water, the right to build a pier or wharf out to the navigable water in front of their land and the right to accretions; but plaintiff, since he is not the owner of the adjacent land, has none of said rights. The title to the soil underlying the water, that is to the bed of the river itself, is vested in the state and is held by the state in its sovereign capacity as trustee for the public and the adverse possession of no person however long continued can divest it of its title.

For these reasons it was proper for the circuit court to sustain the demurrer to plaintiff's amended complaint and to dismiss the suit. The decree of the lower court will, therefore, be affirmed.

AFFIRMED.

COSHOW, C. J., MCBRIDE and ROSSMAN, JJ., concur.