Argued March 22, affirmed October 3, 1956

# McCARTHY ET AL *v.* COOS HEAD TIMBER COMPANY

# HONGELL ET UX *v.* COOS HEAD TIMBER COMPANY

302 P. 2d 238

*Curtis Cutsforth,* Portland, argued the cause for respondents. With him on the brief were King, Miller, Anderson, Nash & Yerke, Ralph H. King and Fredric A. Yerke, Jr., all of Portland.

*Joseph McKeown,* Coos Bay, argued the cause for appellant Coos Head Timber Company. With him on the brief were McKeown, Newhouse & Johansen, of Coos Bay.

*Lloyd Hammel,* Assistant Attorney General for Oregon, argued the cause for appellant State of Oregon. On the brief was Robert Y. Thornton, Attorney General for Oregon.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK, BRAND and PERRY, Justices.

BRAND, J.

In this case two suits have been consolidated for trial in the circuit court and on this appeal. We shall refer to the first suit as the McCarthy case and to the second suit as the Hongell case. In both cases the Coos Head Timber Company, a corporation, is the defendant and in both cases the State of Oregon, acting by and through the State Land Board, has filed a complaint in intervention as a defendant. The McCarthy complaint and the Hongell complaint are identical except for the names of the plaintiffs and the descriptions of the respective properties, and the evidence upon the merits is substantially the same in both cases. The suits were brought by the plaintiffs as upland owners whose properties front on Catching Slough, a tidal estuary. Because the uplands front upon tide lands and are suitable for the storing and mooring of boom logs, the plaintiffs have rented the shores of the properties for the purpose of booming

logs and have derived substantial incomes therefrom. For a number of years prior to October 1, 1950 the waters adjacent and bordering upon the described uplands have been occupied by logs in boom stored by the lessee of the respective plaintiffs. In October, 1950, the State Land Board of Oregon executed an instrument entitled "Tideland Lease" whereby it purported to lease to the Coos Head Timber Company for the period of 10 years from October 24, 1950, all tide and overflow land between mean high water and mean low water lines fronting and abutting upon the lands described therein. The tide lands thus described had a total frontage of approximately eight miles, which included the frontage belonging to the Mc-Carthys and the Hongells, plus the frontage of other persons. The plaintiffs attack the validity of the defendant's lease as violative of the preference right given them by statute to lease the tide lands fronting upon their properties at the highest price offered in good faith. They seek decrees adjudging it to be void as to the tide lands which abut upon their uplands which are described in the respective complaints. The plaintiffs also pray that if the court should find that the defendant had acquired a lease upon the lands fronting upon the real property of the plaintiffs that then the plaintiffs have a decree to the effect that the defendant holds said portions of the lease as trustee for the plaintiffs and directing that the defendant assign and set over to the plaintiffs the portion of the lease relating to said lands, and in the event that the defendant neglects to execute such assignment, then for an order that the decree of the court shall stand and operate as an assignment thereof. The issues are adequately raised by the pleadings and the essential facts are undisputed. The cases were tried

on the merits and the court entered a decree in each case to the effect that the tide lands fronting upon the property of the plaintiffs was held by the defendant company as trustee for the plaintiffs and that the decree should operate as an assignment to the plaintiffs in each case of the leased tide lands fronting upon their uplands. Each decree also enjoined the defendant Coos Head Timber Company from interfering with the use and occupancy by the plaintiffs of the tide lands abutting upon their property. The defendant company and the State of Oregon appeal.

The decision of this case depends upon the construction and application to the facts proven of OCLA, § 106-312, which in its revised form without change of substance, appears as ORS 274.040. As revised, the statute reads as follows:

> "All tide and overflow lands shall be sold or leased only to the highest bidder after being duly advertised for a period of 30 days in two or more newspapers of general circulation in the state, one of which must be published in the county in which the lands lie; provided, that no such lands shall be sold for less than $5 per acre. Any owner of lands abutting or fronting on such tide and overflow lands shall have the preference right to lease or purchase at the highest price offered in good faith. No accretions to islands heretofore sold by the state shall be leased." ORS 274.040.

On 26 July 1950 the defendant company wrote to the State Land Board stating their desire to secure a 10-year lease to certain tide lands on Catching Slough. On 29 July the State Land Board sent to the defendant company application forms. Ensuing correspondence related to the description of lands available for lease. On 14 August the defendant company made application

to the State Land Board to lease the tide lands described therein which included the tide lands fronting upon the uplands of the plaintiffs, and on 5 September the records of the State Land Board show that "The application of Coos Head Timber Company, of Coos Bay, Oregon to lease approximately eight miles of tide and overflow lands on Catching Slough * * * was presented * * *." The State Land Board authorized advertisement of the subject lands for lease for a period of 10 years at a minimum annual rental of $1,000. On 8 September the Board notified the Coos Head Timber Company of its action and enclosed notices in triplicate with instructions that they be published as therein specified. Thereafter the following notice to bidders was published:

### "NOTICE TO BIDDERS

"Notice is hereby given that the Oregon State Land Board will receive sealed bids at its office in the State Capitol, Salem, Oregon, up to 10:00 o'clock A. M. on Tuesday, October 24, 1950, for the leasing of tide and overflow land, which land is described hereinafter, *giving, however, to the owner or owners of any land abutting thereon, for a period of 48 hours after the opening of said bids, the preference right to lease said overflow land* at the highest price offered, provided such offer is made in good faith, and provided the Land Board reserves the right to reject any and all bids.

"Said tide and overflow land is in Coos County, Oregon, and is described as follows:

"All tide and overflow land between mean high water and mean low water lines fronting and abutting the following described land:

[Here follows a description of the tide lands.]

"Bids must be accompanied by a certified or cashier's check or postal money order for the full

amount of the first year's rental, and no bids will be considered for less than $1000.00 per annum, lease to be for a minimum period of 10 years. In addition to the amount bid, the successful bidder shall pay the cost of advertising. All bids should be sealed and addressed to E. T. Pierce, Clerk, State Land Board, Salem, Oregon, and marked 'Bid to lease tide and overflow land.'

"Dated at Salem, Oregon, this 8th day of September, 1950.

"E. T. Pierce,
"Clerk, State Land Board.

"Date of first publication, September 21, 1950.

"Date of final publication, October 19, 1950."
(Italics ours.)

The notice to bidders was advertised in compliance with the provisions of ORS 274.040, supra, one notice being published for the required time in a paper published in Waldport, Lincoln County, and the other being published for the required time in a paper published in Myrtle Point, Coos County, Oregon.

On 19 October 1950 the defendant company executed and thereafter presented to the State Land Board its bid for the leasing of the overflow lands described in the notice to bidders. The provisions of the bid with which we are concerned were the payment of $1,000 rental per annum for a 10-year lease. On 24 October the State Land Board met and considered the application of the defendant company. The minutes of the meeting show that the clerk reported that advertisement of the subject lands for lease for a period of 10 years at a minimum annual rental of $1,000 had been completed. The records further show that the clerk then presented the only bid received in response to

said advertisement, namely, the bid of the defendant company. The minutes then recite:

"Upon consideration of said bid and the recommendation of the clerk, the board authorized execution and delivery of lease in conformity therewith, *subject to the riparian rights provided by statute.*" (Italics ours.)

On 30 October the State Land Board executed a lease to the defendant company in consideration of $10,000 which was to be paid in annual instalments of $1,000 covering the tide and overflow land described in the notice to bidders.

The defendants rely solely upon the sufficiency of the published notice to bidders and no notice was sent to any of the plaintiffs concerning the proposed leasing or concerning any preference right. The plaintiffs were not aware of any proceedings looking to the lease of October 30 nor of the execution of such lease until some weeks after its execution. The Board received no communication from the plaintiffs prior to the execution of the lease. It is conceded that the defendant company has complied with the terms contained in the written lease. The procedure followed in this case was in accordance with the "established procedure of the State Land Board" which had been in effect since 1937. The Land Board had not prescribed any different or other notice except the published notice to bidders mentioned in the statute. The form of the notice to bidders was prepared by the Board.

The complaints allege and the evidence shows that the defendant company knew that the plaintiffs were the owners of the lands described in the respective complaints and that they had leased the same for use in connection with logging operations and that the

lands were being occupied by the lessees of the plaintiffs. It is further alleged that the defendant company knew or should have known that the plaintiffs would desire to exercise the preference right to lease their abutting tide lands, and we think the evidence supports the allegation. Plaintiffs assert that since the eight miles of tide and overflow lands covered by the lease were owned by more than one person, the tide lands fronting upon the real property of each separate owner should have been advertised as a separate tract, to the end that the preference rights might have been exercised. The position of the plaintiffs, as stated in their complaints, is as follows:

"By reason of the lack of notice to plaintiffs with respect to the tide and overflow lands upon which the real property described in paragraph IV hereof fronts and abuts, and the failure to call for separate bids with respect to said tide and overflow lands, the purported tide land lease hereinbefore mentioned between State Land Board of Oregon and defendant Coos Head Timber Company is invalid and ineffective as to the tide and overflow lands on which the real property described in paragraph IV hereof fronts and abuts."

The defendant company has entered into possession and use of at least some of the leased tide lands and has made valuable improvements thereon in excess of $20,000. However, the defendant company in open court admitted that "none of the improvements were directly on the tide lands abutting the front of the lands of the plaintiffs * * *."

By its answer the defendant alleges that the plaintiffs are estopped to assert the invalidity of the lease because of their failure to exercise their preference rights prior to the execution of the lease. It is also alleged that plaintiffs seek to acquire the tide lands,

not for themselves, but in order that they may re-lease the same to the Cape Arago Lumber Company, a competitor of the defendant company. They also rely upon the making of valuable improvements as the basis for estoppel. The plaintiffs admit that they made no effort to obtain a lease and allege that they did not know that the state was willing to lease said tide lands.

The complaint in intervention recites the procedures taken substantially as herein stated, asserts the validity of the lease, and alleges that the Land Board has 96 lease agreements outstanding and that if a decree is rendered in favor of the plaintiffs the validity of other leases may be affected, with resultant litigation.

After the execution of the lease by the State Land Board in favor of the defendant company the plaintiffs executed renewal leases covering the shore land and boom privileges and tide lands fronting their respective uplands to the Cape Arago Lumber Company. The Hongells were to receive $600 rental per annum and the McCarthys to receive $500 per annum from said leases. It appears that the Coos Head Timber Company had previously followed the practice similar to that of the Cape Arago Lumber Company and had acquired leases from upland owners on Catching Inlet covering the use of the tide lands fronting thereon, and that such was the general practice until the summer of 1947 when the Land Board asserted that such use constituted a trespass upon the rights of the state. Concerning the preference rights of upland owners, the evidence shows that the practice of the Land Board has been to wait 48 hours after the submission of bids to give the upland owners opportunity to exercise their preference rights.

All parties agree to the general proposition that the State of Oregon is the absolute owner in its pro-

prietary capacity of the tide lands within its borders and that it may dispose of them as it sees fit. It is plaintiffs' contention that the State of Oregon, acting through its legislature, has seen fit to grant to them a statutory privilege to lease the tide land abutting upon their respective properties. They further contend that such preference right cannot be defeated by any rule of the Land Board and that the procedure followed in this case in effect nullified the statutory preference right.

■■ From the fact that the state need not grant any right to the upland owner it does not follow that it may not grant rights which administrative bodies and courts must respect and protect. We will first comment upon the provisions of the statute which created the preference right: (1) Leases by the state are authorized only after competitive bidding and only to the highest bidder. The upland owner is not one of the bidders. (2) The Land Board can lease tide lands only after the required notices have been published. (3) The preference right given to the upland owner applies only to the tide lands fronting or abutting upon his uplands. No owner having a small portion of the frontage would have a preference right to lease the entire eight miles of tide land fronting on the lands of others. (4) If the upland owner elects to exercise the right he must pay the highest price offered in good faith. This clause refers to the good faith of the high bidder and not, as is suggested by the defendant, to the good faith of the one exercising the preference right. It follows that although the statute gives to the upland owner a real right, it is one which can be measured and exercised only after the highest bid has been received, opened and found to have been made in good faith.

We will next consider what has not been included in the statute. The only requirement in the statute for publication of notice relates to the sale or leasing to the highest bidder. The subject of notice to a preference holder who is not a bidder is not mentioned. Specifically, there is no provision for notice addressed to upland owners and no provision concerning the time within which the preference right must be exercised. When, as in the case at bar, a continuous body of tide land which fronts upon the uplands of many owners is offered for sale or lease, there is no statutory requirement that the bids shall segregate the tide lands in accordance with the lands on which they front with separate bids for each described parcel. Again, if a single bid is made for the leasing of such tide lands so fronting, and the rental offered is in an unsegregated lump sum, there is no statutory rule for determining the amount which the upland owner must pay to exercise his preference right to lease the portion fronting on his upland, and no statutory provision for informing the upland owner of the amount required or of the manner by which that amount may be determined and ascertained.

■ Without some rules governing the matters which are not covered by the statute, no upland owner would have a fair opportunity to exercise his preference right. The legislature in apparent recognition of this fact expressly provided that the State Land Board "shall make such rules and regulations as are necessary for * * * carrying out the provisions of law applicable to such board. * * *" ORS 273.420. The statute imposes upon the Board a mandatory duty.

Now turning to the rules adopted by the Board. There is apparently a rule or an established practice which gives to the upland owner only 48 hours after

the opening of bids within which to exercise his preference right. No rule has been made providing for any notice of any kind or at any time to the upland owners, unless the "Notice to Bidders" is to be construed as notice to upland owners who are not bidders. The Board has failed to make rules covering the other matters upon which the statute is silent, as above indicated.

Turning to the procedure actually followed we see that the form of "Notice to Bidders" prepared by the State Land Board, after describing eight miles of tide lands by metes and bounds, merely stated that the upland owner or owners would be given a preference right to lease "said overflow land." There is no indication in the notice that the preference right could be exercised severally by each upland owner as to the tide land fronting upon his property, or that it could be exercised at all, except as to "said overflow land" described in the notice, to-wit, eight miles thereof. Neither the notice published nor the bid made by the defendant nor the resolution of the Land Board accepting the bid gave any intimation as to the amount of money any upland owner would have to pay to exercise his limited preference right or as to the procedure by which the amount could be determined. There is no reason to believe that the fair rental for the tide lands fronting on the property of the plaintiffs would be fixed at that proportion of the total rental which the plaintiffs' frontage bore to the total frontage, or at the proportion which the area of tide lands abutting upon their lands bore to the total area of the tide lands described in the lease. It is obvious from the record that some portions of the tide lands were narrow and of little value, whereas some portions were of considerable value by reason of their location. If all of the other

objections to the procedure were overruled, the fact would remain that the Land Board apparently required the plaintiffs to "buy a pig in a poke", or at least, to rent one. Within 48 hours of the receipt of the bid, the plaintiffs were required to claim their right to lease abutting tide lands at a price which was unknown to them, undeterminable by them, and undetermined by the Board. Strangely, it appears that the notices which were actually published appeared under the heading "Notice to Bidders" in one of the two newspapers but appeared in the other paper without any caption except that they were published under a general heading "Legal Notices."

■■■ The defendants insist that the owner of uplands has no riparian property interest in the abutting tide lands but only a statutory preference. This proposition requires some qualification. We must agree that our decisions indicate that the state may so dispose of tide lands as to deprive the uplands owner of any right thereto. Nevertheless there are well-recognized rights in the upland owners which are not derived from the statutory preference right and which have been recognized by the courts for many years. We refer to the common-law right of access to deep water. We are not here concerned with any question of the power of the state by proper procedure to limit or destroy the right of access without giving compensation when it deeds or leases tide lands to others than the upland owner. We cite the following authorities to show that both courts and legislature have repeatedly recognized a public policy to protect the interests of upland owners in abutting tide lands. The general rule is stated thus:

"The rule prevailing in most jurisdictions is that the ownership of land bordering on a navigable

stream or body of water, either tidal or nontidal, carries with it, as incidental thereto, the right of access from such land to the navigable channel or portion of such stream or body. This right of the riparian or littoral proprietor is distinguished from that which individual members of the general public enjoy. It is a property right analogous to an abutting owner's right of access to a highway on land, and is something more than the common or public right of access to the water front from public grounds or over a public approach." 56 Am Jur 677, Waters, § 216.

The rights of access are recognized in *Eagle Cliff Fishing Co. v. McGowan,* 70 Or 1, 137 P 766; *Johnson v. Jeldness,* 85 Or 657, 167 P 798; *Gatt v. Hurlburt,* 131 Or 554, 562, 284 P 172; *Darling v. Christensen,* 166 Or 17, 31, 109 P2d 585; *Hoff v. Peninsula Drainage District,* 172 Or 626, 638, 128 P2d 966. See also, 65 CJS 143, Navigable Waters, § 61; Gould on Waters, § 149, p 300; *Case v. Toftus,* 39 F 730, 734.

■ The statutory protection given to the upland owner by ORS 274.040, supra, is a further recognition of the public policy of this state. The administrative rules adopted and the procedure followed should be considered in the light of that public policy.

■ It seems clear that the State Land Board could not validly lease tide lands to a third party without providing by some means for the exercise of the statutory preference right. It is also clear that the execution of a lease with no notice of any kind to the upland owner would, in effect, destroy the right given. We need not consider whether or not a proper notice given by publication only would satisfy the requirements of fairness which are imposed on the Land Board. The question here is whether the rules adopted and the

procedure followed sufficiently notified the plaintiffs of their rights. From *In re Lounsberry,* 208 Iowa 596, 226 NW 140, 143, we quote:

> "When notice is required to be given to one to put him to taking measures for the protection or defense of his right or claims, on penalty for neglect of having them cut off, the notice must be such as to show on its face, both to him and to those who are required to act upon it, or decide whether the requisite notice has been given, that it is intended to be notice to him. * * *

> "It is the well-established law of this state that a notice on which depends jurisdiction in first instance of a board or court, or jurisdiction on appeal, must be so addressed and framed as to unequivocally disclose the party for whom it is intended, and who is to be affected by the proceeding. * * * *,,

See also, *Steele v. Murry,* 80 Iowa 336, 45 NW 1030; *In re Anderson's Estate,* 125 Iowa 670, 101 NW 510; *Sleeper v. Killion,* 166 Iowa 205, 147 NW 314. We think the Iowa rule is applicable here.

■ The notice which is directed to bidders refers only to proceedings to be taken up to and including the opening of bids. It recognizes a right in the upland owner but does not inform him as to what he must do to exercise it. We think that the legislature contemplated that the exercise of the preference right should be a separate transaction to be taken after the bids are in and in which the Land Board should determine the price to be paid by the upland owner for his portion of the tide lands. The legislature certainly provided for adequate notice to bidders, but it intended that the Land Board should adopt rules for the reasonable protection of the holders of preference rights.

■ We will now consider the extent and nature of the powers of the State Land Board. It is authorized to make such rules "as are necessary for * * * carrying out the provisions of law applicable to such board." ORS 273.420. The rule-making powers of the State Land Board are similar to those of the Federal Land Department. Rules must be appropriate, reasonable, within the limitations of the law for the enforcement of which they are provided. They must be consistent with the law and of such a nature as to tend to its enforcement. *United States v. Morehead,* 243 US 607, 61 L ed 926; 42 Am Jur 429, Public Administrative Law, § 100; 73 CJS 420, Public Administrative Bodies and Procedure, § 103; 73 CJS 424, Public Administrative Bodies and Procedure, § 104; 73 CJS, Public Lands, § 177 b; 39 Am Jur 245, Notice and Notices, § 21; *State v. Des Chutes Land Co.,* 64 Or 167, 175, 129 P 764; *Boord v. O'Brien,* 98 NYS 1.

In *Williamson v. United States,* 207 US 425, 462, 52 L ed 278, the United States Supreme Court stated the limitations upon the powers of the Commissioner of the General Land Office. The statement is equally applicable to the State Land Board of Oregon:

"* * * True it is that in the concluding portion of § 3 of the timber and stone act it is provided that 'effect shall be given to the foregoing provisions of this act by regulations to be prescribed by the Commissioner of the General Land Office.' But this power must in the nature of things be construed as authorizing the Commissioner of the General Land Office to adopt rules and regulations for the enforcement of the statute, and cannot be held to have authorized him, by such an exercise of power, to virtually adopt rules and regulations destructive of rights which Congress had conferred. * * *"

In *Gouge v. David et al,* 185 Or 437, 459, 464, 202 P2d 489, in an opinion by Justice ROSSMAN, we said:

"* * * A statute which creates an administrative agency and invests it with its powers restricts it to the powers granted. The agency has no powers except those mentioned in the statute. It is the statute, not the agency, which directs what shall be done. The statute is not a mere outline of policy which the agency is at liberty to disregard or put into effect according to its own ideas of the public welfare. * * *

* * * * *

"* * * Administrative rules and regulations can go no further than fill in the interstices of the dominant act. * * *"

See also, *Richardson v. Neuner,* 183 Or 558, 564, 194 P2d 989; *Winslow v. Fleischner et al,* 112 Or 23, 228 P 101; 42 Am Jur 610, Public Administrative Law, 209.

The complaint in the pending case is in effect a direct attack upon the procedure of the State Land Board and the validity of the lease which it executed to the defendant company. The question is whether the remedy sought is appropriate.

In *Witbeck v. Hardeman,* 51 F2d 450, the issue arose between two contestants for a permit to prospect for gas and oil. Hardeman complied with the law giving him a preference right and sued in equity asserting that the Secretary of Interior had committed error in issuing the permit to his competitor. The relief sought there, as here, was that Witbeck be declared trustee of the permit for Hardeman. The court said:

"* * * Regulation 5 recognizes this preference, and declares that priority in initiating the claims shall govern in case of conflict. The Secre-

tary has discretion to decide whether particular land shall be withdrawn from exploitation, and may refuse all applications for permits to explore it. United States ex rel. McLennan v. Wilbur, Secretary, 283 U.S. 414, 51 S.Ct. 502, 75 L.Ed. 1148. But having decided that the land shall be exploited, he must recognize the statutory preference in issuing the permit, there being no discretion to ignore this plain mandate of the law.'' Citing cases.

Concerning the permit, the court said:

"* * * though in its inception a mere license conveying no estate in the land, it is a final grant of a valuable right pursuant to law which ought to be secured to the person to whom the law gives it. * * *''

It was then held that the remedy sought, if invoked without laches, should be allowed. The ruling was upon a motion to dismiss, which was the equivalent of demurrer. The ruling which recognized the power of equity to hold that the permittee should be considered the trustee for the holder of the preference right is not lessened in value by the fact that the court then proceeded to consider the merits and found that the preference holder had lost his right by failing to comply with other statutory requirements.

 In cases involving legal title and right to certificate of sale or deed the statute provides that the acts of the Oregon State Land Board shall be final. Such action is not subject to collateral attack in actions at law. But, in harmony with *Witbeck v. Hardeman,* it is held that a court of equity may decree that a bidder shall hold the land as trustee for the one holding a better right in equity. *Corpe v. Brooks,* 8 Or 222; *Wardwell v. Paige,* 9 Or 517; *State v. Warner Valley Stock Co.,* 56 Or 283, 106 P 780, 108 P 861; *Morrow v.*

*Warner Valley Stock Co.,* 56 Or 312, 101 P 171; *Darling v. Christensen,* 166 Or 17, 109 P2d 585. See also, *Garfield v. Goldsby,* 211 US 249, 53 L ed 168.

The authorities strongly suggest that the State Land Board had ample power and a duty to prescribe reasonable rules which would effectuate the clear intent of the legislature and would accord to upland owners a reasonable opportunity to exercise their preference right. We hold that after the bid of the defendant company had been made, opened, and found to have been in good faith, the plaintiffs were entitled to notice of their preference right, to know the tide lands to which it referred, and the price which they would be required to pay, or at least, the procedure by which that price could be determined. The fixing of a 48-hour deadline within which to exercise an undetermined, and as to the plaintiffs, an undeterminable right concerning a proposed lease to third parties of which plaintiffs knew nothing, would appear to constitute arbitrary action.

There remains to be considered the contention of the defendants that the decision of this case is determined by the ruling in *Darling v. Christensen,* supra. The plaintiff Darling brought suit to quiet title to two tracts of land. We are concerned only with tract two which consisted of land lying between ordinary high and low water on the shore of Siltcoos Lake and designated as "meander land". The plaintiff claimed title under a deed from the State Land Board. The defendants, as upland owners, contested plaintiffs' claim of ownership. The circuit court had dismissed the plaintiffs' complaint and entered a decree that the defendants were the owners of an easement over the meander land enabling them to have access to the waters of the lake. In addition to the defendants' claim that the

deed violated their common-law right of access, they also asserted that the deed was executed in disregard of the statutory right of preference given to the riparian owners under OC 1930, § 60-312, now ORS 274.040, supra. In the Darling case a "Notice to Bidders" was published, the text of which was similar to the "Notice to Bidders" in the pending case. The notice was published in conformity with the provisions of the statute. The court, by Kelly, C. J., said:

"We are unwilling to hold that compliance with the terms of the statute, as to publication of notice of intention to purchase tidelands, constitutes a violation of the spirit of such statute. * * *"

It is upon this statement from the Darlings' case that the defendants rely in the pending litigation. Concerning this statement we would say that no one contends that compliance with the terms of a statute constitutes a violation of the spirit of the statute. Our position is that the statute itself provides that the Land Board shall make appropriate rules; that such rules are necessary to supplement the statute and that the rules made and procedure followed amounted to a practical deprivation of the statutory right. So far as the bidders were concerned, we agree that the "Notice to Bidders" published in compliance with the statute would be sufficient. The issue actually decided in Darlings' case is entirely different from the one presented in the case at bar. In Darlings' case no one was seeking to exercise his priority right to buy the meander land fronting upon his upland. The upland owners were merely seeking to establish their right of access to the water over and across the meander lands which the plaintiffs had bought from the State Land Board. It is by no means clear that the defendants owned any upland on which

any of tract two abutted. The easement was claimed because defendants owned lots which abutted on streets which bordered the lake. The only issue which this court decided was whether defendants had such an easement of access. This court held that the plaintiffs' case should not have been dismissed and that the plaintiffs acquired title to the meander land under the deed from the State Land Board, but it went on to hold that said title was subject to right of the littoral owners "which * * * right includes access to Siltcoos lake over the respective easements appurtenant to the property abutting upon the property in suit * * *." The court held that the deed from the State Land Board should not be invalidated, but it pointed out that the Land Board was not a party to the case. In the pending suit the State Land Board is a party. Finally, the opinion in Darlings' case deliberately distinguished the issue there from the one involved here. The court said:

"At most, if a case had been made wherein some one other than plaintiff, Jesse Darling, was shown to be entitled to a deed from the State Land Board to said property, then a decree might be entered declaring said plaintiff to be the trustee of the person entitled to the deed and requiring a transfer of the real property to such person, or in default thereof that such decree should be considered as such transfer. No attempt is made here to present such a case."

The plaintiff in the case at bar is attempting to present the identical issue which this court said was not involved in Darlings' case.

It is unnecessary for us to decide whether an upland owner has an easement of access to the water over meander land or tide land which has been deeded by

the state to a third party. *Parker v. Taylor,* 7 Or 435, 446; *Bowlby v. Shively,* 22 Or 410, 419; *Lewis v. Portland,* 25 Or 133, 158, 159, 35 P 256; *Corvallis & Eastern R. Co. v. Benson,* 61 Or 359, 369, 121 P 418; *Gatt v. Hurlburt,* supra, 131 Or 554, 560, 284 P 172; *Pacific Elevator Co. v. Portland,* 65 Or 349, 400, 133 P 72. We simply hold that *Darling v. Christensen* is not controlling in the case at bar, whether its decision was right or wrong.

■ The defendants contend that the legislative history of Oregon in regard to tide lands requires us to hold that ORS 274.040 must be construed to mean and intend that no notice of any kind need be addressed to the upland owners, either by publication or by personal service, and that the only requirement is the publication of a notice to bidders referred to in the statute. In support of the general rule that the legislative history may be considered in construing a statute when construction is necessary, the defendants cite 50 Am Jur, Statutes, §§ 275, 276 and 354. The question here, however, concerns the applicability of the rule, not its existence. In examining the early statutes we must recognize a distinction between two types of preference right given to upland owners in respect to the purchase of tide lands. By the first type of preference it was provided that the upland owner shall have a right to purchase from the state the tide lands in front of such owner's property and the time was fixed within which the upland owner must make application to purchase. In this type of preference right it is obvious that there was no need for any notice to be given to the upland owner. The statute itself gave to him notice of his right to initiate proceedings for purchase. The second type of statute to which ORS 274.040 belongs was entirely different. In cases of this

type the law was dealing with the situation in which persons other than the owners of uplands might initiate proceedings for purchase and in which the preference right of the upland owner arose only after some third party had made a bid. Under statutes of this type the preference right of the owner arose only after action had been taken by some private individual, a matter of which the upland owner might have no knowledge unless notice was given him. Preference rights of the first type were recognized in 1872 when it was provided that the upland owner shall have a right to purchase from the state all state-owned tide lands in front of such owner, the preference to extend for a period of one year after the passage of the act. Under the law of 1872 no notice was necessary for the protection of the upland owner, for the initiation of proceedings was at his option. By the same token, it was unnecessary for an administrative body to make rules for the protection of such preference right and no such rules were authorized by the statute. Laws of 1872, Sec. 5, p 129. In 1874 a preference right of the second type was created by statute. That statute provided that if the right to purchase tide lands had not been exercised by the upland owner, then the land should be open to purchase by other persons. The statute then provided that when application to purchase was made by such persons other than the owner of the upland, notice should be given by the Board to the owner of the upland and such owner shall have preference over all others. The statute further provided that if actual notice could not be given to the upland owner, notice might be given by publication. Under this statute, since the preference right depended upon action by persons other than the owner of the upland, the legislature made provision for notice to such owner.

The Laws of 1874 made no provision for the making of administrative rules by the Board supplementary to the provisions of the statute, and consequently, the statute itself provided for notice to the upland owner. Laws of 1874, p 76, at 78.

In 1878 the Laws of 1874 and 1876 were repealed and the legislature returned to the first type of preference right similar to that established by Laws of 1872. It provided that:

> "* * * the owner or owners of any lands abutting or fronting upon or bounded by the shore of the Pacific ocean, or of any bay, harbor, inlet, lake or water course, shall have the right, for one year following the passage of this act, to purchase all the tide or swamp lands, belonging to the State, in front of the lands so owned, to the amount of one half section to each owner: * * *" Laws of Oregon, 1878, p 42.

As we previously pointed out, it was unnecessary in this statute to provide for notice to the upland owner whose right it was, under the statute, to initiate proceedings for the purchase of tide lands. The statute made no provision for such notice to the upland owner. In this statute, however, the legislature for the first time granted to the Board of Commissioners (the predecessor of the State Land Board) a limited power to make rules. The first such authorization was apparently mandatory; the second optional. It was provided that "The board shall make such rules and regulations for ascertaining the value of lands as they may deem most conducive to that end * * *." Laws of Oregon, 1878, Sec. 6, p 44. By the second authorization it was provided that "The commissioners may make rules for the transaction of business under this act; * * *." Laws of Oregon, 1878, Sec. 14, p 47.

The preference right of the second type, such as that granted in the 1874 act, does not reappear until the year 1907. Then, after a delay of 33 years, the legislature defined the powers of the State Land Board, authorized the sale or lease of tide lands, and granted a preference right to the upland owner to lease or purchase at the highest price offered by any bidder. This statute did not itself provide for notice to the upland owner, but for the first time it gave broad general authority to the State Land Board. The statute went beyond the authority contained in the 1878 statute and issued a mandate: ''The State Land Board * * * shall make such rules and regulations as are necessary for the transaction of business *and carrying out the provisions of this act. * * *''* General Laws of Oregon, 1907, Ch 117, Sec 9, p 209. (Emphasis ours.) This provision remained unchanged until 1943 when the language was slightly modified. See 1943 Laws, Ch 175, Sec 4. This portion of the 1943 amendment has been carried without substantial change into the Revised Statutes, and now reads as follows:

> ''The State Land Board may sell or lease all lands owned by the state, and shall make such rules and regulations as are necessary for the transaction of business and carrying out the provisions of law applicable to such board. * * *'' ORS 273.420.

In view of this legislative history we reject the contention that the omission from ORS 274.040 of any express requirement of notice directed to the preference right holder requires us to construe that section as a legislative declaration that no such notice is required. To summarize our reasons, (1) the 1874 law which required notice to the upland owner related only to sales, not to leases of tide land. The authority to lease was first inserted in the Laws of 1907. (2) We

find no reason for holding that the 1907 legislature had the 1874 laws in mind when it passed the 1907 act. Thirty-three years had passed between the two acts and a statute (Laws of 1878) had been passed after 1874 and before 1907, which had changed the entire character of the rights of the upland owner, as we have demonstrated. (3) From and after 1907 it was unnecessary for the legislature to spell out the details of the procedure which was required in order to effectuate the statutory preference, because it had delegated to the Land Board both the power and the duty to do so under its rule-making powers.

Defendants also rely upon certain opinions of the Attorney General. We agree that contemporaneous construction of statutes by action of an administrative body under the advice of the Attorney General is entitled to serious consideration by the courts, though it is not binding upon them. 50 Am Jur 309, Statutes, § 319; *Kelly v. Galloway,* 156 Or 301, 66 P2d 272, 68 P2d 474; *Rosell v. State Ind. Acc. Com.,* 164 Or 173, 95 P2d 726. In this connection the weight to be given by the courts to the practical or administrative construction of a statute depends largely upon whether such construction is reasonably contemporaneous with the enactment of the statute. *City of Portland v. Welch et al.,* 126 Or 293, 269 P 868; *Kelsey v. Norblad, Governor, et al.,* 136 Or 76, 298 P 199; *Eugene School Dist. No. 4 v. Fisk,* 159 Or 245, 79 P2d 262; *Howell v. Bain,* 176 Or 187, 156 P2d 576.

In March 1932 the State Land Board requested the opinion of the Attorney General concerning the validity of the deed by the Board to Jesse Darling, being the same deed which was considered by this court nine years later in the case of *Darling v. Christensen,* supra. The opinion was by I. H. Van Winkle, Attor-

ney General, by Willis S. Moore, Assistant, and stated that "The statute does not direct or authorize the giving of any additional notice to owners of abutting property * * *." Opinions of the Attorney General, 1930-1932, p 568. He made no reference to the powers of the Land Board to provide for such notice by rule. Again, the question presented to him was not raised by one who was then seeking to exercise his preference right. We think the Attorney General was in error. He made no reference to an opinion which he had rendered in January 1921, which reads, in part, as follows:

"Since the advertising is for the purpose of securing bids, and since the highest bid may be received on the last day by the State Land Board, and since the law gives abutting property owners the preference right to purchase at the highest price offered, it would seem necessary that the abutting property owner should be notified by the State Land Board of the highest bid received and be given a reasonable time to exercise his preference right. Upon his failure to exercise that option within such reasonable time it may be sold to the highest bidder.

"* * * Actual notice and an opportunity to purchase at the highest price offered is sufficient but the records should show this fact.

"Mr. Stevens apparently considers that the advertising required is notice to the abutting property owner, but it does not show the abutting property owner the highest bid offered and therefore does not give him an opportunity to choose whether or not he will purchase at that price. * * *

"As to tide and overflowed land abutting on land owned by Mr. Gray, no notice to or waiver from the Crown-Willamette Paper Company is necessary, but as to that abutting on land owned by the latter company, actual notice of the highest bid should be given." Opinions of the Attorney General, 1920-1922, p 55.

In 1926 the same Attorney General, by the same Willis S. Moore who wrote the 1932 opinion, advised the State Land Board with regard to leasing tide lands, that "a uniform rule should be adopted and adhered to." He added:

"I would also suggest that the notice be caused to state that separate bids should be submitted for the different tracts described, and that the different parcels should be referred to as tract No. 1, tract No. 2, tract No. 3, etc." Opinions of the Attorney General, 1924-1926, p 664.

So far as we are concerned with the rule concerning contemporaneous construction it would appear that the opinions of 1921 and 1926 are entitled to great weight and are more in harmony with the public policy of the legislature than any later opinions.

The defendants rely upon one additional opinion of the Attorney General which was rendered as late as March 1951. It is a slender reed on which to lean. The facts were that Gilfillan, an upland owner, claimed the preference right to lease the tide lands fronting upon his property. Those tide lands had been advertised and the bid of a lumber company had been made and accepted by the State Land Board, although the lease had not yet been executed. The upland owner claimed the right to lease at the highest bid offered by the lumber company. The opinion of the Attorney General refers to the contrary opinion previously rendered in 1921 but it offers no argument against the conclusions expressed in 1921. The opinion stated that the validity of a tide lands lease cannot be assailed for failure to give personal notice to the preference holder. The opinion added that the deeds of the Land Board are not open to collateral attack. It did not discuss the right to proceed by a direct attack in

equity. The Attorney General then made a persuasive argument against his own conclusions, as follows:

"Yet the statute gives the owner or owners of any land abutting on any such tide or overflow lands 'the preference right to lease or purchase at the highest price offered, provided the offer is made in good faith': § 106-312, supra. [OCLA, § 106-312] The statute does not say when, or in what manner, this so-called preference right shall be exercised. In our opinion it is a matter that should be covered by a rule or regulation of the board, and in the absence thereof the safer and more equitable rule to follow is that the preference right may be exercised at any time before the deed or lease is finally executed. Accordingly, in the instant case the offer by the riparian owner was timely where the lease had not yet been executed and the offer is made in good faith, assuming your rules or regulations do not provide otherwise.

&ast; &ast; &ast; &ast; &ast;

"We suggest that it would be entirely proper for the board to enact rules and regulations relating to the notification of riparian owners of the highest bids that have been received for the sale or lease of tide lands, and the length of time following acceptance of bids in which the preferential right may be exercised. As previously indicated, the published notice is sufficient compliance with the law, but the board may, if it so desires, give or supply any additional notice that it feels is just and equitable. A rule may also be adopted with respect to the procedure to be followed in the description of lands in the application and notice.

&ast; &ast; &ast; &ast; &ast;

"A lease may be executed with the said lumber company covering parcel No. 1, excepting the portion claimed by Mr. Gilfillan, if the said described land may be segregated and divided and the proposed rental properly adjusted. The offer made by Gilfillan may be accepted and a lease executed per-

taining to the tide and overflow land abutting on his property, assuming the rental price may be prorated or adjusted in a manner satisfactory to the board.'' Opinions of the Attorney General, 1950-1952, pp 174, 175.

 In our opinion some form of notice to the preference holders was necessary. It should have been given after the bid had been received and should have allowed a reasonable time within which the owner could exercise his preference right. It was the duty of the Board to make rules which would implement the statute. It is held that:

"When a statute confers authority upon an administrative governmental agency to make an order affecting rights of persons or property, and no provision is made for notice, the court will require reasonable notice. Bank of North Wilkesboro v. Wilkesboro Hotel Co., 147 N.C. 594, 61 S.E. 570; Pittsburg, C. & Y.R.Co., v. Moses (Pa.Sup.) 2 A. 188'' *Isaac v. Town of Queensbury,* 288 NYS 113, 121.

 Since notice was necessary and no provision was made therefor by rule or statute, we hold that personal notice was required. *Boeing Air Transport v. Farley,* 75 F2d 765. We should not permit the practice of the Land Board to defeat the obvious purpose of the statute. *Webster v. Luther,* 163 US 331, 342, 41 L ed 179.

 The defendants suggest that the giving of reasonable notice to the upland owners would impose a serious burden upon the Land Board. We think not. With regard to the purchase of tide lands the applicant is required by statute to cause the same to be surveyed at his own expense. "The survey shall connect with and conform to the adjacent surveys of the United States, so far as practicable." ORS 273.030(4).

There is no reason why an applicant to lease tide lands should not be required by the Land Board to furnish a survey and plat showing the names of the owners whose lands front upon the tide lands which he seeks to rent. In fact, the records of this case show that there was submitted to the Land Board on 22 August 1950 the application of the Coos Head Timber Company to which was attached a plat showing the abutting upland ownerships.

█ Defendants contend that plaintiffs are not entitled to exercise their preference right because the evidence shows that they propose to lease their abutting tide lands to the Cape Arago Lumber Company if they secure the lease from the Land Board. ORS 274.040 is a special statute particularly applicable to the preference right of upland owners. It imposes no limitation on the preference right of such owner as to the use to which he may put the tide lands, and the Land Board has made no such limitation, if indeed it has power to do so, which we doubt.

In this case the defendant company made a single bid for the entire eight miles of tide land. The plaintiffs prayed that the defendant company be decreed to hold the tide lands fronting upon their uplands as trustee for plaintiffs. But for a stipulation made by the parties it would have been necessary for the trial court to remand the case to the Land Board with directions to determine the amount of the total rental which the plaintiffs should pay for the portion of tide lands allotted to them. However, the parties, including the state by its Land Board, stipulated that the rental allocable to the tide lands abutting on the McCarthy property was "$200 per year out of the total yearly rental of $1,000 reserved in said tideland lease" and

that the rental allocable to the tide lands fronting upon the Hongell property was $150 per year.

The decree of the circuit court provided that it should operate as an assignment to the plaintiffs of the lease of the tide lands fronting upon their respective properties and determined the amount of rent allocable to each tract in accordance with the stipulation. The decree is affirmed, plaintiffs to recover costs from the defendant corporation only.