# IN THE OREGON TAX COURT

## TWENTIETH CENTURY-FOX FILM CORPORATION
*v.*
## DEPARTMENT OF REVENUE
(TC 1987)

Maurice O. Georges and David C. Culpepper, Miller, Nash, Wiener, Hager & Carlsen, Portland, represented plaintiff.

Elizabeth S. Stockdale and Theodore W. de Looze, Assistant Attorneys General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered March 21, 1984.

## SAMUEL B. STEWART, Judge.

Plaintiff is in the business of producing and distributing motion pictures. Its only business activity in Oregon during the subject years was the licensing of motion pictures for exhibition by independent theaters in Oregon. Plaintiff's film assets include positive prints (used to exhibit a movie) and film negatives (developed film exposed when the movie was filmed). Plaintiff filed Oregon corporate excise tax returns for 1975, 1976 and 1977, using the standard three-factor apportionment formula. Defendant's auditor adjusted the property factor for each of the years involved, which had included only the positive prints, to include a portion of the film negatives. Plaintiff contested defendant's proposed modification of the apportionment formula but defendant upheld its auditor and plaintiff appealed, alleging that defendant had not met the burden of proof required by ORS 314.670 and the Oregon Supreme Court's interpretation of ORS 314.670 in *Donald M. Drake Co. v. Dept. of Rev.*, 263 Or 26, 500 P2d 1041 (1972).

Defendant answered, alleging that it had borne the burden of proof by showing that the operation of the standard three-factor formula did not operate fairly to reflect the business activities of plaintiff in the state and that the modification required by the defendant was reasonable.

What is involved in this matter is the division of business income between the states in which the corporation involved does business. The tendency of state tax administrators is to adjust their methods of division so as to maximize revenue. As long ago as 1917, Professor T. S. Adams of Yale,[1] referring to this problem, told the National Tax Association:

[1] HR Rep No. 1480, 88th Cong, 2d Sess 129 (1964), quoting Adams, *The Taxation of Business,* 1917 Proceedings, National Tax Association 185, 194.

"What is most needed is a uniform rule. Just what rule shall be selected is less important than the general adoption of the same rule by competing jurisdictions."

Notwithstanding studies by the National Tax Association, the Council of State Governments and the Controllers Institute of America, efforts to achieve uniformity fell largely on barren ground because of the disparity of interests among the states and the consequent difficulty in finding one formula that would satisfy those interests. It was commonly alleged that there was a substantial degree of uniformity because most states used the Massachusetts formula, *i.e.,* a three-factor apportionment formula, using property, payroll and sales as the factors. However, when the definition of the three factors was examined, what, at first glance, appeared uniform turned out to be highly diverse.[2]

In 1957, the National Conference of Commissioners on Uniform State Laws adopted the Uniform Division of Income for Tax Purposes Act (hereafter referred to as UDITPA) in which the Massachusetts three-factor formula was adopted. The national conference recognized that this would change the relative tax burdens of the taxpayers within a given state and might have a material effect on the total tax revenues of such states but that "[i]n the opinion of the national conference, uniformity has overriding advantages and, therefore, an apportionment formula which is believed to be equitable should not be revised to increase or decrease tax revenues." Pierce, *The Uniform Division of Income for State Tax Purposes,* 35 *Taxes* 747, 750 (1957).[3]

The Uniform Act contained a section 18 providing as follows:

"If the allocation and apportionment provisions of this Act do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the [tax administrator] may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

"(a)  separate accounting;

---

[2] See discussion of efforts to achieve uniformity in the division of income—HR Rep No. 1480, 88th Cong, 2d Sess, Part II, Income Taxes 129-133.

[3] William J. Pierce, then Professor of Law at University of Michigan Law School, was a member of the national conference and draftsman of the Uniform Act.

"(b) the exclusion of any one or more of the factors;

"(c) the inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

"(d) the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income." (Uniform Division of Income for Tax Purposes Act § 18, 7A ULA 106-107 (1978).)

The principal reason for the inclusion of section 18 was to provide alternative methods of allocation and apportionment in the event the Uniform Act formula caused an arbitrary or unreasonable result so as to violate due process and equal protection clauses of the fourteenth amendment. Professor Pierce, however, was of the opinion that "a reading of the Supreme Court decisions indicates that it is extremely difficult for any taxpayer to show that the use of a formula causes an arbitrary and unreasonable levy in relation to local business activity." Pierce, *supra,* at 748. *See* n 3.

Oregon adopted the Uniform Act in 1965 (1965 Or Laws ch 152; now ORS 314.605 to 314.670) and, in 1976 (1976 Or Laws ch 242), Article IV of the Multistate Tax Compact, when the Compact was enacted. The Compact is now ORS 305.655. Article I of the Compact set out as one of the four purposes: "2. Promote uniformity or compatibility in significant components of tax systems." ORS 305.655.

Article VI of the Compact created the Multistate Tax Commission and gave as one of its powers the authority to: "(3) (b) Develop and recommend proposals for an increase in uniformity." *Id.* One of the first acts of the Commission was to appoint a Rules and Regulations Committee and direct it to draft regulations for the Uniform Act. The Committee did so and the Commission approved uniform allocation and apportionment regulations in September 1971. Mack, *Report of the Chairman of the Multistate Tax Commission,* Fourth Annual Report Multistate Tax Commission 6-7 (1971).

The regulations were not widely accepted—only two states adopted them and Oregon was not among them. Corrigan, *Report of the Executive Director,* Tenth Annual Report Multistate Tax Commission 1 (1977). As a result, the Rules and Regulations Committee revised and the Commission approved the revised uniform allocation and apportionment

regulations on February 21, 1973. This time eight states, including Oregon, promptly adopted the same. Dorgan and Corrigan, *Report of the Chairman and the Executive Director,* Sixth Annual Report Multistate Tax Commission 1 (1973).

The defendant Department of Revenue's 1973 tax administrative rule OAR 150-314.670-(A) presumably reflects the foregoing. It reads as follows:

"ORS 314.670 provides that if the allocation and apportionment provisions of ORS 314.610 to 314.665 do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the department may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

"(1)   Separate accounting;

"(2)   The exclusion of any one or more of the factors;

"(3)   The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state; or

"(4)   The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

"ORS 314.670 permits a departure from the allocation and apportionment provisions of ORS 314.610 to 314.665 only in limited and specific cases. ORS 314.670 may be invoked only in specific cases where unusual fact situations (which ordinarily will be unique and nonrecurring) produce incongruous results under the apportionment and allocation provisions contained in ORS 314.610 to 314.665.

"In the case of certain industries such as air transportation, rail transportation, ship transportation, trucking, television, radio, motion pictures, various types of professional athletics, and so forth, the foregoing rules in respect to the apportionment formula do not set forth appropriate procedures for determining the apportionment factors. Nothing in ORS 314.670 or in OAR 150-314.670-(A) to 150-314.670-(C) shall preclude the department from establishing appropriate procedures under ORS 314.655 to ORS 314.665 for determining the apportionment factors for each such industry, but such procedures shall be applied uniformly." (OAR 150-314.670-(A) (1973) (amended 1975).)

The first paragraph of the foregoing is a reiteration of section 18 of the Uniform Act and a distillation of Professor

Pierce's article, *supra*. *See* n 3. The last paragraph provides that:

> "In the case of certain industries * * * the foregoing rules in respect to the apportionment formula do not set forth appropriate procedures for determining the apportionment factors."

The certain industries named in the last paragraph of OAR 150-314.670-(A) include "air transportation, rail transportation, ship transportation, trucking." Those industries, however, are not subject to the Uniform Act in the first instance, being excluded therefrom. See definition of "public utilities" in section 1 and exclusion of public utilities in section 2 of the Uniform Act, 7A ULA, *supra,* and ORS 314.610(6) and ORS 314.615. Railroads, for example, were excluded because the National Conference of Commissioners on Uniform State Laws thought their income "could be apportioned on a mileage or other similar basis which would more accurately reflect income attributable to a state than the use of a formula designed for manufacturing and merchandising businesses, as is the case in the uniform act." Pierce, *supra,* at 748-749. Notwithstanding the exclusion, in 1981, the Multistate Tax Commission adopted a special railroad regulation. Corrigan, *Executive Director's Report,* Fourteenth Annual Report Multistate Tax Commission 6 (1981). In 1982, there was submitted to the Multistate Tax Commission a proposed airline regulation for approval. Corrigan, *Executive Director's Report,* Fifteenth Annual Report Multistate Tax Commission 3 (1982). As such, these transportation industries did not and do not fall within the rationale of section 18 of the Uniform Act, ORS 314.670 and OAR 150-314.670-(A). The last paragraph of OAR 150-314.670-(A) also goes forward to include "television, radio, motion pictures, various types of professional athletics, and so forth." What other businesses are included in the phrase "and so forth" is not known nor is there any indication of why the businesses named in this group cannot be fairly allocated and apportioned pursuant to the Uniform Act like all other businesses not so singled out in the regulation. As indicated above, the Multistate Tax Commission has adopted special railroad regulations and is in the process of adopting special airline regulations. Earlier it had adopted a special regulation for construction contractors

engaged in a multistate business. Corrigan, *Executive Director's Report,* Thirteenth Annual Report Multistate Tax Commission 5 (1980). Construction contractors had never been included in the list of industries to which the Uniform Act did not apply.

The activity of the Multistate Tax Commission in drafting regulations interpreting the Uniform Act is a highly laudable one. The only way that the goal of uniformity within and between the states can be achieved is by providing some effective mechanism to assure that the several states adopting the regulations closely adhere to the same. Unfortunately, the court is not aware of the existence of such an effective mechanism. For one thing, "[a]doption of regulations by the Multistate Tax Commission constitutes only a recommendation that member states adopt them." Clark and Corrigan, *Report of the Chairman and of the Executive Director,* Seventh Annual Report Multistate Tax Commission 1 (1974). Of the 20-member states, 12 have formally adopted the regulations on the Uniform Act. For another, the regulation on section 18 of the Uniform Act does not comply with the spirit or the letter of the Uniform Act because:

(A)   Section 19 of the Uniform Act states that "[t]his Act shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." 7A ULA, *supra,* at 108. The regulation insofar as section 18 and the industries therein stipulated are concerned does just the opposite, in essence, providing that as to those industries each state's tax administrator can do whatever he or she chooses.

(B)   The drafter of the Uniform Act indicated that section 18 was only to apply to a situation where the Uniform Act caused such an arbitrary or unreasonable result that it violated the due process and equal protection clauses of the fourteenth amendment and that this was extremely difficult to show. Here the last paragraph of the regulation announced by fiat that such a situation obtains as to certain industries.

(C)   The Oregon Supreme Court has construed the language of section 18 codified as ORS 314.670, authorizing the use of other methods than the three-factor apportionment formula provided by the Uniform Act. The court stated that such use "should be exceptional and the party—the taxpayer

or the Department of Revenue—who seeks to invoke the applicability of ORS 314.670 has the burden of proof." *Donald M. Drake Co., supra,* at 32. The defendant's regulation thus defeats the clear intent of the statute. Under such circumstances, this court has indicated it requires no citation of authority to hold that a regulation inconsistent with the statute upon which it is based is invalid. *Bailey v. Commission,* 2 OTR 399, 407 (1966). This position is buttressed, however, by a decision holding that regulations "must be consistent with the law and of such a nature as to tend to its enforcement." *McCarthy v. Coos Timber Co.,* 208 Or 371, 390, 302 P2d 238 (1956).

In view of the above finding, the defendant in this case may not rely upon the last paragraph of the above regulation for authority to depart from the allocation and apportionment provisions of ORS 314.610 to 314.665.

ORS 314.650 provides that certain business income "shall be apportioned" to Oregon by use of a three-factor formula. In reference to the property factor, ORS 314.655(2) states that "[p]roperty owned by the taxpayer is valued at its original cost."

The defendant alleged that the value of plaintiff's property for purposes of the property factor should be determined by the ratio represented by the sales factor. ORS 314.670 allows a departure from the allocation and apportionment provisions of ORS 314.610 to 314.665 if the provisions do not fairly represent the extent of the taxpayer's business activity in Oregon. The Oregon Supreme Court has given a narrow construction to ORS 314.670, agreeing with this court that "the use of any method other than apportionment should be exceptional and the party * * * who seeks to invoke the applicability of ORS 314.670 has the burden of proof." *Donald M. Drake Co., supra,* at 32.

The statutory mandate is that the standard apportionment formula outlined in ORS 314.610 to 314.665 is to be used unless that formula does not fairly represent the extent of the taxpayer's activity in this state. The defendant alleges that it has "not departed from the use of the apportionment method * * *. What defendant has done is modify the calculation of the property factor of the apportionment formula"

because the standard property factor definition is unfair. (Defendant's Post Trial Brief at 3.)

The defendant alleges that the California guideline, stating that the UDITPA formula was modified in order to provide a more equitable apportionment of income in the film industry, is evidence that Oregon's statutory formula does not fairly represent the plaintiff's business activity in Oregon.

The California guideline results in an apportionment to California that is more favorable for members of the motion picture industry than the standard UDITPA formula adopted by Oregon. A substantial factor in developing the California guideline was the possibility that the industry might relocate its film inventory outside California if the guideline was unfavorable to the industry. (Stipulation ¶ 8 at 2.)

In order for the defendant to prevail in this matter before the court, the defendant must rely upon its administrative rule, OAR 150-314.670-(A), or it must prove by a preponderance of the evidence that the statutory three-factor formula does not fairly represent the plaintiff's business activity in Oregon.

As stated earlier in this opinion, the defendant cannot rely upon its administrative rule for support. The defendant's evidence was directed exclusively toward the property factor. No evidence was offered that the application of the statutory formula as a whole failed to fairly represent the extent of the plaintiff's Oregon business activities.

■ The fact that California has voluntarily waived its right to reach all income from film companies which might otherwise be apportioned to California under the standard formula does not prove that the standard formula fails to promote uniformity or full accountability.

■ The underlying motive for the adoption of a formula in apportioning business income earned in operations involving more than one state was the pressing need to promote uniformity. Such a formula seeks a rough justice which unfortunately is often the best standard that can be achieved in taxation. *Ash Grove Cement Co. v. Dept. of Rev.*, 7 OTR 6 (1977).

In view of the Supreme Court's narrow construction

of ORS 314.670 and after careful study of the evidence offered, the court finds that the defendant failed to support its burden of proof and in this instance may not modify the statutory apportionment formula.

The defendant's Opinion and Order No. I 83-48 is reversed and plaintiff's returns will be accepted as filed with the defendant with the adjustment described in paragraph X E. of the amended complaint. If the plaintiff has paid taxes exceeding those required by this determination, the defendant shall refund any excess paid, plus statutory interest thereon.