Argued January 29, decided February 11, 1913.

## STATE v. DES CHUTES LAND COMPANY.

(129 Pac. 764.)

**Public Lands—Reclamation of Desert Lands—Disposal by State.**
1. Act Congress August 18, 1894, c. 301, 28 Stat. 422 (U. S. Comp. St. 1901, p. 1554), authorized the Secretary of the Interior to contract with states, in which there was situated desert lands, to grant such lands to the State as the State might cause to be irrigated, reclaimed, occupied, and cultivated by actual settlers, and provided that the State might make all necessary contracts to cause the lands to be reclaimed, and to induce their settlement and cultivation. Act Cong. June 11, 1896, c. 420, 29 Stat. 434, authorized the State to create liens on the separate legal subdivisions of land reclaimed for the cost of reclamation. Laws 1901, p. 378 (Section 3283, et seq.: B. & C. Comp.), accepting such lands, provided that upon application by any person, company, etc., desiring to reclaim any desert lands, the State Land Board should apply to the Secretary of the Interior and contract with him for the patent of the lands to the State. Section 2 authorized the State Land Board to make such contracts and agreements, and assume such obligations concerning the lands, as might be necessary to induce the reclamation thereof, and to create liens against the separate legal subdivisions for the cost of reclamation, and provided that the State should not be liable for the amount of any such liens. Section 4 provided that the State Land Board, on receipt of the application, map, etc., should contract with such person, company, etc., for the construction of the works according to the plans; and that the board should, by the contract, fix the amount due such person, company, etc., for the reclamation and the annual charge for maintenance of the irrigation system, and create a lien against the separate legal subdivisions for such amount. Section 6 provided that such person, company, etc., should be entitled to enter on the land and retain full possession, control, etc., until the lien thereon should have been satisfied. Section 10 provided that any citizen desiring to purchase any quarter section on which there was a lien for the cost of reclamation should pay the proportionate amount of the entire lien; and that the holder should then release the tract so paid for from the lien. Held, that the State Land Board was not authorized to insert in a contract any provision restraining the alienation of the contractor's lien or posses-

sory interest in the land; and hence a provision in a contract that no agreement for the purchase of water rights and release of the lien or settlement should be entered into between the contractor and any settler until after the date of reclamation and notice thereof to the board was void, especially in view of Act February 24, 1909 (Laws 1909, p. 377: Section 3860 et seq., L. O. L.), revising the law of 1901, and providing, in Section 12 (Section 3871, L. O. L.), that no land shall be open to entry, and no water rights sold by the parties, under the contract with the board, until the construction of the works is sufficiently advanced to insure a water supply, and the entry of an order by the board, opening the land to entry and sale—this being a legislative recognition that there was no such provision in the previous law.

**Officers—Authority—Notice.**

2. Persons dealing with an agent of the State acting under a public law are bound to take notice of the enactment conferring his authority; there being no such thing as apparent authority in such a public officer, as there would be in the case of an agent for a private party.

**Officers—Exceeding Authority—Effect.**

3. A contract by a public officer in excess of the provisions of the statute authorizing the contract is void, so far as it departs from or exceeds the terms of the law.

From Multnomah: HENRY E. McGINN, Judge.

Statement by MR. JUSTICE BURNETT.

This is a suit by the State of Oregon against the Des Chutes Land Company, a corporation.

On September 25, 1907, the defendant entered into a contract with the then State Land Board for the reclamation of certain desert lands in this State under what is known as the Carey Act of Congress and legislation of this State in pursuance thereof. That board having been supplanted by the desert land board by virtue of the act of February 24, 1909, passed by the legislative assembly of Oregon, the latter body, acting in the name of the State, brought this suit to restrain the defendant from violating certain negative provisions of that contract. The circuit court dismissed the suit on demurrer to the complaint, and the State appeals.        AFFIRMED.

For appellant there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney General, *Mr. Isaac H. Van Winkle,* Assistant Attorney General, *Mr. James W. Crawford,* Assistant Attorney General, *Mr. H. C. Brodie,* with an oral argument by *Mr. Andrew M. Crawford.*

There was also a brief over the names of *Mr. Claude McColloch* and *Messrs. McColloch & McColloch, Amici Curiae,* with an oral argument by *Mr. Claude McColloch.*

For respondent there was a brief and oral arguments by *Mr. A. C. Shaw* and *Mr. Charles W. Fulton.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. By the Act of Congress of August 18, 1894, entitled "An act making appropriations for sundry expenses of the government for the fiscal year ending June 30, 1895, and for other purposes," the Secretary of the Interior, with the approval of the President, was authorized and empowered, upon proper applications of certain states, of which Oregon was one, "to contract and agree from time to time with a state in which there is situated desert lands * * to donate, grant and patent to the State free of cost of survey or price such desert lands not exceeding 1,000,000 acres in each state as the state may cause to be irrigated, reclaimed and occupied and not less than 20 acres of each 160-acre tract cultivated by actual settlers within ten years next after the passage of the act as thoroughly as is required of citizens who may enter under the desert land law." After providing for the preparing and submitting to the Secretary of the Interior for his approval plans, specifications, and maps of the proposed scheme of irrigation, the act says:

"That any state contracting under this section is hereby authorized to make all necessary contracts to cause the said lands to be reclaimed and to induce their settlement and cultivation in accordance with and subject to the provisions of this section, but the state shall

not be authorized to lease any of said lands or use or dispose of the same in any way whatever except to secure their reclamation, cultivation and settlement." Act Aug. 18, 1894, c. 301, 28 U. S. Stat. at Large, 422 (U. S. Comp. St. 1901, p. 1555) ; L. O. L., p. 65.

The act also stipulated that as fast as any state might furnish satisfactory proof that the lands are irrigated, reclaimed, and occupied by actual settlers the general government will issue patents to the State or its assigns for such lands; that the State should not sell or dispose of more than 160 acres of land to any one person; and that any surplus of money derived by any one state from the sale of lands above the cost of their reclamation should be held as a trust fund, to be applied to the reclamation of other desert lands in that state. The Act of Congress of June 11, 1896 (29 Stat. at Large, 434, c. 420), making appropriations for sundry civil expenses of the government for the ensuing year and for other purposes, made a rule, in substance, that under any law enacted by a state providing for the reclamation of arid lands pursuant to and in acceptance of the acts of Congress already mentioned liens were authorized to be created by the State to which such lands were granted, and by no other authority whatever, and when created should be valid against the separate legal subdivisions of land reclaimed for the actual cost and necessary expenses of reclamation and reasonable interest thereon from the date of reclamation until disposed of to actual settlers. The act also specified that when an ample supply of water is actually furnished patents should issue to each state without regard to settlement or cultivation, and further provided that in no event should the United States be responsible for the amount of the liens or liability in whole or in part. This legislation is known in common parlance as the "Carey Act."

By an "act to provide for the acceptance by the State of Oregon of certain lands and for the reclamation and

disposal of the same," filed in the office of the Secretary of State February 28, 1901, the legislative assembly accepted the conditions of the Carey Act. Laws 1901, p. 378; Section 3283 *et seq.*, B. & C. Comp. By this law it was declared that, upon application to the State by any person, company, association or corporation desiring to reclaim any of the desert government lands in Oregon, the State Land Board should make proper application to the Secretary of the Interior and contract with him for the patent of such lands to the State. This further provision appears in Section 2 of the act (Section 3284, B. & C. Comp.):

"Said State Land Board is hereby authorized to make and enter into such contracts and agreements and to assume such obligations in relation to and concerning said lands as may be necessary to induce and cause such reclamation thereof as is required by the contract with the Secretary of the Interior and the Acts of Congress, and is authorized and empowered to create a lien or liens which when created shall be valid on and against the separate legal subdivisions of land reclaimed for the actual cost and necessary expense of reclamation and reasonable interest thereon from the date of reclamation until said lien shall have been satisfied; *provided,* that in no event, in no contingency and under no circumstance shall the State of Oregon be in any manner directly or indirectly liable for any amount of any such lien or liability in whole or in part."

Section 3 of this act required the person or corporation desiring to enter into a contract to furnish all preliminary maps, plans, and surveys for the approval of the Secretary of the Interior. Section 4 reads thus:

"Upon the receipt of the application, map, plan of irrigation, payment, etc., as provided in Section 3225, the State Land Board shall enter into a contract with the said person, company of persons, association, or incorporated company applying therefor, for the construction of the works substantially according to the plans submitted under said contract. The person, company of persons,

association, or incorporated company entering into the same shall undertake and agree to furnish an ample supply of water, substantially in accordance with the plans submitted, to reclaim said lands in compliance with the act granting the same to the State, and make the proofs required by the Secretary of the Interior for the issuance of patent, and to pay all costs of advertising and other expenses incident to such proof and application for patent. Said person, company of persons, association, or incorporated company shall further agree and undertake that work will be commenced upon the ditches or other works necessary for the reclamation of said lands within six months after the signing of the contract by the Secretary of the Interior; that by the end of the first year ten per cent of all the necessary expenditures will be made, and that this work will be prosecuted with due diligence until complete, and the proof of reclamation is made as required by the Acts of Congress. The State Land Board shall, by said contract, fix the amount due the persons, company of persons, association, or incorporated company for the reclamation of said land, and the annual charge for the maintenance of the irrigation system, and create a lien which shall be valid on and against the separate legal subdivisions of the land reclaimed for the amount due as agreed upon, and interest thereon at the rate of six (6) per cent per annum from the date of reclamation until said lien shall have been satisfied."

Section 6 said that:

"Immediately upon the execution of the contract, the person, company of persons, association or incorporated company undertaking the reclamation shall be entitled to enter upon the land the reclamation of which has been undertaken and shall have and retain the full possession, control, use and right of occupancy of said land until the lien thereon shall have been satisfied."

The succeeding section provides for a forfeiture of the contract in case the contracting party fails to complete the work as specified. By Section 10 it is laid down that:

"Any citizen desiring to purchase any unsold quarter section of desert land on which there is a lien for the

cost of reclamation shall pay to the holder of said lien such proportion of the amount of the entire lien as the true value of the tract bears to the true value of the whole tract subject to liens; *provided,* that the State Land Board having control of these lands shall designate the proportion of the amount of the entire lien which the desired tract bears to the whole tract subject to the lien. Thereupon the holder of said lien shall release the tract so paid for from the lien and the purchaser shall be entitled to settle upon said tract, and it shall be the duty of the State Land Board to deed the tract to the purchaser without further payment."

The agreement of September 25, 1907, was made by the defendant, as party of the first part and the State Land Board, acting for the State of Oregon, as party of the second part. In respect to the lien for reclamation the contract stipulated that:

"The party of the second part hereby declares, fixes, and establishes the sum of $36 per acre for each acre of land embraced in this contract which may be reclaimed as the amount due and payable to the said party of the first part for the actual cost and necessary expenses for the reclamation of the lands and now hereby creates a lien on and against the lands which shall be valid on and against the separate legal subdivisions of the land reclaimed from the date of reclamation until disposed of or released to settlers, together with interest at 6 per cent per annum on the full amount of the lien from the date of reclamation until paid."

It was specified in the contract that:

"No agreement for the purchase of water rights and release of the lien or settlement upon any of said lands shall be entered into between the party of the first part and any settler or any person or persons until after the date of the reclamation and notice thereof given in writing by the party of the second part to the party of the first part."

It is for an alleged breach of this last-mentioned provision that this suit is instituted.

As stating a violation of the contract, the complaint alleges:

"That defendant has caused to be printed, placed on the market, is threatening to sell, offering to sell, has sold, and is selling to citizens of the State of Oregon and of the United States, its so-called 'assignment of lien,' a true copy of which is as follows."

The pleading then sets out a blank form of agreement, in which neither the names of the parties, sums of money, nor description appears. It provides, however, that on payment of sundry sums of money at various periods within the lapse of ten years from the date of reclamation, amounting in all to $36 per acre, the defendant here agrees to assign, sell, and set over unto the supposed purchaser all the defendant's right, title, and interest in and to the lands to be described when said subdivision shall have been reclaimed by the defendant. The blank also contains a condition that the proposed purchaser shall settle on the subdivision and obtain his deed thereto within three years from the date of reclamation, or cause the same to be done within that period.

The complaint charges in general terms that the acts of the defendant thus specified are in violation of its contract and amount to a contract to sell water rights and land; that if the defendant is permitted to continue placing on the market such an instrument irreparable damage will be done to the plaintiff and the people of the State; and that if it is not enjoined it will continue the injury of the State and its people aforesaid. We observe in passing that, like the federal government, the State disclaims in the statute all responsibility for the enforcement of the liens mentioned, and that it has no beneficial interest in the lands, or in the proceeds of the sale thereof; the net proceeds being reserved as a trust fund for the reclamation of other arid lands.

2, 3. The question is whether the State Land Board had authority to insert the provision quoted in the contract

with the defendant. By its legislation the State created the State Land Board as its agent to transact the business provided for in the act. There is no apparent authority, so called, in a public officer whose duties are prescribed by statute like there would be in the case of an agent for a private party. The representative of the State must have actual authority in such cases. The agent of the State, acting under a public law, must find sanction for his doings in the statute itself; and parties dealing with such agent are bound, at their peril, to take notice of the enactment conferring the agent's authority. A contract made by a public officer in excess of the provisions of the statute authorizing such contract is void, so far as it departs from or exceeds the terms of the law under which it was attempted to be negotiated. *Bunch* v. *Tipton,* 76 Ark. 167 (88 S. W. 888); *Cahill* v. *Board,* 127 Mich. 487 (86 N. W. 950: 55 L. R. A. 493); *Carolina Natl. Bank* v. *State,* 60 S. C. 465. (38 S. E. 629: 85 Am. St. Rep. 865); *State* v. *Chilton,* 49 W. Va. 453 (39 S. E. 612); *Hord* v. *State,* 167 Ind. 622 (79 N. E. 916); *Jobe* v. *Urquhart* (Ark.) 143 S. W. 121; *Louisville & N. R. R.* v. *Railroad Com'rs* (Fla.) 58 South. 543; *Allin* v. *County Board,* 148 Ky. 746 (147 S. W. 920).

The general scope and purpose of the Carey Act and of the State legislation supplemental thereto was to encourage the reclamation of desert lands, so that the same should become habitable. There is no intimation in any of the legislation noticed that alienation of lands should be hindered or impeded. Both the national legislation and the State law authorized the contracts and agreements that may be necessary to "induce and cause such reclamation." The Oregon statute itself prescribes this in general terms, and in addition thereto lays down with particularity the conditions which shall be included within the contract with any person or corporation desiring to undertake a reclamation project; but it does not

authorize the board to insert any provision restraining the alienation of the contractor's lien or possessory interest in the lands conferred by the statute. On the contrary, Section 10 of the act prescribes that any citizen desiring to purchase any unsold quarter section of desert land on which there is a lien for the cost of reclamation shall be entitled to purchase the same on the terms therein specified; that the State Land Board is empowered to apportion the amount of lien resting upon the tract sought to be purchased; and that the holder of the lien shall be required to release the tract from the lien. In our judgment, the provision of the contract upon which the State relies in this suit is inconsistent with the provisions of that section just noted; and hence it is in plain excess of the authority of the board, conferred by the statute in force at the time the contract was made. Being a departure from the board's authority, and thus contrary to the statute the provision is void and does not bind either party to the instrument, because a contract, to be efficacious, must be equally binding upon both parties. The defendant had a right to contract to do in the future what might legally be done under the provisions of that section. While it would be within the scope of legislative authority to prevent actual settlers from going upon the land and stipulating with the corporations for the extinguishment of its liens, so that the settler could proceed unhampered in the establishment of his home, yet this species of paternalism was not vested in the State Land Board.

We have, in effect, a legislative construction of the act in question; for by the terms of the later act of February 24, 1909 (Laws 1909, p. 377), this whole statute of 1901 was repealed, and a revised procedure was established, relating to desert lands. Section 3860 *et seq.*, L. O. L. Section 12 of the repealing act, Section 3871, L. O. L., provided that:

"No land shall be open to entry and no water rights shall be sold by the parties under the contract with the board until the construction of the works is sufficiently advanced to insure a water supply and the entry of an order by the board opening such land or any portion thereof to entry and sale."

This legislation is an evident recognition that this provision was lacking and could not be enforced under the previous law. The legislature did not attempt to and could not inject into the previous contract here in question any element not authorized by the former statute.

The demurrer was properly sustained, and the judgment of the circuit court is affirmed.     AFFIRMED.