Raymond WASHINGTON, et al.,
Plaintiffs-Appellants,

v.

Clayton PENWELL, et al.,
Defendants-Appellees.

Nos. 81–3211, 82–3449.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1983.

Decided March 3, 1983.

Robert A. Stalker, Salem, Or., Stan Sitnick, Portland, Or., for Washington.

David Frohnmayer, Atty. Gen., Salem, Or., for Clayton Penwell.

Before WRIGHT, SNEED, and POOLE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This is a case of the Emperor's new clothes.

The State of Oregon, chafing under an increasingly vexatious decree consented to by its prison officials, realized it was playing an unwarranted role in a legal fiction. It asks us to agree that what enmeshes it is a fallacy and thereby to dispel the illusion.

The saga began when indigent Oregon prisoners sued state officials, alleging that inadequate legal facilities denied their constitutional right of access to the courts. In 1978, District Judge Belloni entered a consent decree requiring accessible prison law libraries and trained prisoner paralegals. A second consent decree clarified these requirements.

Another provision, the matter now at issue, provided that the court would continue jurisdiction to determine whether the state provided plaintiffs' counsel, Prisoners' Legal Services of Oregon (PLSO), sufficient funds to insure adequate general legal services to inmates.[1]

In 1979, Judge Belloni granted the prisoners a temporary restraining order, requiring defendants to fund PLSO to the extent "necessary to meet the Constitutional mini-

---

1. The relevant part of the disputed provision is set forth below:

    (D) ... [I]n view of the desire of Prisoners' Legal Services ultimately to obtain full funding from the State of Oregon, this Court will continue its jurisdiction over this case for two years from the date of this Consent Decree in order to determine whether the State of Oregon has contracted with or otherwise provided those funds sufficient for Prisoners' Legal Services to continue operating at that level necessary to insure the provision of adequate, general legal services to state inmates.

mum of legal services needed for 'meaningful access to the courts.'" He ordered the parties to negotiate a contract for permanent implementation of the decree.

The parties' contract was approved by the judge in 1980. It provided for (1) funding of PLSO for nine months, (2) state development of a long-range plan for court access, and (3) cooperation in a study of inmate needs by the ABA or similar organization as a basis for the plan.

The completed study was critical of PLSO's performance. PLSO, who failed to participate in the study, in turn criticized it.

In 1980, defendants offered a long-term program and a 1981–83 contract for PLSO's legal services. They refused to sign a contract unless it was contingent on legislative authorization and appropriation. When PLSO rejected that condition, they withdrew the offer.

PLSO petitioned for enforcement of the decree. District Judge Frye treated defendants' response as a request for modification.

Noting that PLSO did not challenge defendants' compliance report on libraries and paralegals, she found these in substantial compliance with decree requirements. This more than satisfied constitutional standards for inmate access to the courts. *See Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) (sufficient if state provides libraries). She concluded therefore that the purposes of the decrees had been accomplished. She modified them to include only libraries and paralegals, relieving the defendants of any duty to fund legal services, perform studies, or develop plans. She terminated jurisdiction and dismissed the action.

When PLSO appealed, this panel thought the funding provision ambiguous. It remanded for determination whether there was an undertaking to fund legal services. If so, that duty could be avoided only if the decree were unenforceable or if changed circumstances, to be specified by the trial judge, permitted modification.

On remand, the district judge determined there was an undertaking to fund legal services. She modified the decree by vacating that provision. She reasoned that the decree was unenforceable because defendants lacked authority to bind the state to this substantial fiscal obligation. PLSO appeals.

I. *Timeliness of the Motion to Vacate*

In vacating the funding provision, the district judge acted on defendants' motion under Federal Rule of Civil Procedure 60(b).[2] The rule provides relief from a final judgment or order for five enumerated reasons or, under a sixth provision, for "any other reason justifying relief." Defendants specified the sixth subsection as the ground for their motion. The district judge said the motion could also be characterized as a 60(b)(4) motion that the judgment was void.

PLSO contends that the motion was untimely. If we accept each step of its argument, relief would be barred.

First, PLSO disputes the district judge's characterization of the motion as a 60(b)(4) challenge of a void judgment. Next, it contends that the motion is really a 60(b)(1) motion on grounds of mistake, *i.e.,* a mistake about defendants' authority to bind the state to the funding provision. It argues that case law prohibits a 60(b)(6) "residual category" motion for something fitting under one of the specific grounds enumerated in 60(b)(1)–(5). Any 60(b) motion must be made within a reasonable time, but for 60(b)(1) that time cannot exceed one year.

---

**2.** This rule provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (4) the judgment is void; ... or

> (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b).

Finally, PLSO argues that the timeliness of defendants' April 1982 motion should be measured from the 1978 decree when the defendants, as the district judge found, knowingly undertook to fund legal services. The judge measured it from her February 1982 finding that defendants had so undertaken, reasoning that any prior motion would have been premature.

■ In view of the important state interests implicated here, we conclude that the motion was allowable under Rule 60(b)(6). *See United States v. 119.67 Acres of Land,* 663 F.2d 1328, 1330–31 (5th Cir.1981); *cf. Klapprott v. United States,* 335 U.S. 601, 613–14, 69 S.Ct. 384, 389–90, 93 L.Ed. 266 *modified on other grounds,* 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 1099 (1949). We need not address the propriety of the motion under 60(b)(4).

■ As there is no specified time limit for 60(b)(6), whether the motion was timely is a matter of the district court's discretion. *Perrin v. Alcoa,* 197 F.2d 254 (9th Cir.1952). In view of the extraordinary circumstances, there was no abuse of discretion in concluding that this motion was made within a reasonable time.

II. *Enforceability of the Funding Provision*

■ In determining the enforceability of the provision, the district judge used contract principles. Because a consent decree has attributes of both a contract and a judicial act, *United States v. Motor Vehicle Manufacturers Ass'n,* 643 F.2d 644, 648 (9th Cir.1981), courts use contract principles in construing it. *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975); *Kittitas Reclamation District v. Sunnyside Valley Irrigation District,* 626 F.2d 95, 98 (9th Cir.1980), *cert. denied,* 449 U.S. 1079, 101 S.Ct. 861, 66 L.Ed.2d 802 (1981). State law

applies when interpreting consent decrees. *Collins v. Thompson,* 679 F.2d 168, 170 (9th Cir.1982).

■ The trial judge determined that defendants and their counsel, the Oregon Attorney General, lacked power to bind the state to this financial undertaking.[3] The perpetual obligation to fund legal services violates state law. Oregon's Constitution, article XI section 7, prohibits the state from incurring more than $50,000 debt, with certain inapplicable exceptions. *See Martin v. Oregon Building Authority,* 276 Or. 135, 554 P.2d 126, 137 (1976) (en banc).

Executive officials such as defendants are forbidden to exercise legislative functions, including the making of appropriations, which are vested in the state assembly. *Id.* art. III § 1, art. IV § 1(1). Drawing money from the treasury except through appropriations made by law is proscribed. *Id.* art. IX § 4. Statute forbids authorizing disbursement of state funds except by prescribed methods. Or.Rev.Stat. § 291.990(1).

■ Under Oregon law, the contract underlying the consent decree was void to the extent that it exceeded defendants' authority. *See State v. Des Chutes Land Co.,* 64 Or. 167, 175, 129 P. 764 (1913); *accord, Baker v. Deschutes County,* 10 Or.App. 236, 498 P.2d 803, 805 (1972). The district judge held that, because the contractual funding provision was void, the consent decree provision was unenforceable.

PLSO argues that the district judge erred in applying an exclusively contractual analysis to a consent decree. *See Twentieth Century-Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1340 (9th Cir.1981) (relief from provision of consent judgment must be considered under Rule 60(b) principles rather than under contract law analysis). *Accord, United States v. Swift & Co.,* 286 U.S. 106, 115, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932) (consent decree). It contends that because

---

**3.** State officers must have the Attorney General as their counsel. Or.Rev.Stat. § 180.220(2). PLSO insists that he had power to compromise this claim against the state.

An inquiry into his authority to bind the state is irrelevant here. The state was not his client

in this matter. The named defendants in this lawsuit were the state officials, not the state. *Cf. Vecchione v. Wohlgemuth,* 558 F.2d 150, 155 (3d Cir.), *cert. denied,* 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977).

a decree is no longer a contract but a judicial act, the state is now bound by the power of the court, not the contract.

Strict application of that principle would, in the circumstances of this case, result in an *ultra vires* judicial attempt to bind a nonparty, the state, to the litigation, and would create an impermissible constitutional confrontation between the federal court and the state legislature.

The Eleventh Amendment prohibits lawsuits against the state by private parties. To circumvent this prohibition when federal rights are violated, courts have resorted to the "legal fiction," *Vecchione v. Wohlgemuth,* 558 F.2d 150, 156 (3d Cir.), *cert. denied,* 434 U.S. 943, 98 S.Ct. 439, 54 L.Ed.2d 304 (1977), of allowing injunctive suits against state officials rather than the state itself. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Peters v. Lieuallen,* 693 F.2d 966, 970 (9th Cir.1982).

By virtue of the supremacy clause, U.S. Const. art. VI § 2, officials are bound to do what is constitutionally mandated, even if the state objects. Under *Ex parte Young,* the state cannot force officials to violate federal law. 209 U.S. at 159–60, 28 S.Ct. at 453–54. That compliance with a decree enforcing federal law will have an ancillary effect on the state treasury is the inevitable and permissible consequence of *Ex parte Young*-type suits. *Edelman v. Jordan,* 415 U.S. 651, 667–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974). *See Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977) (approving court order against state officials to disburse state funds for instituting educational program in desegregation suit).

■ If general legal services for prisoners were required by the Constitution, we might be able to enforce this provision, notwithstanding the state's protest. It would be a method of meeting constitutional standards, and one formulated by the officials charged with penal supervision. *Cf. Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979); *Wright v. Rushen,* 642 F.2d 1129, 1132–33 (9th Cir.1981).

■ The district court could not have entered an involuntary decree requiring state officials to do more than the minimum needed to conform with federal law. "[A]n equitable decree should not go further than necessary to eliminate the particular constitutional violation which prompted judicial intervention in the first instance." *Spain v. Procunier,* 600 F.2d 189, 194 (9th Cir.1979) (prisoners' suit alleging Eighth Amendment violations). *Accord, Wright v. Rushen, supra,* 642 F.2d at 1132–34. Similarly, the district court's authority to adopt a consent decree comes only from the law the decree is intended to enforce. *See United States v. Motor Vehicle Manufacturers Ass'n, supra,* 643 F.2d at 650.

In this consent decree, however, defendants agreed to do more than constitutionally required. *See Bounds v. Smith, supra,* 430 U.S. at 828, 97 S.Ct. at 1498. No one contemplated that they were to fund legal services from their private assets. The provision on its face ran against the State of Oregon. Unlike other, more prudent plaintiffs, *see Brewster v. Dukakis,* 675 F.2d 1, 2–5 (1st Cir.1982), these did not limit the decree to defendants' best efforts to obtain state funding. When defendants later tried to condition their performance on legislative approval, PLSO refused. The state has balked at further cooperation with PLSO.

Relief under Rule 60(b)(6) is extraordinary, especially where the judgment was rendered by consent. *Twentieth Century-Fox Film Corp. v. Dunnahoo, supra,* 637 F.2d at 1341. But the circumstances here are extraordinary, too. The draconian standards applicable to requests for modification of consent decrees against private parties, *see, e.g., id.* at 1341–42; *United States v. Armour & Co.,* 402 U.S. 673, 681–83, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d 256 (1971); *United States v. Swift & Co.,* 286 U.S. 106, 116–20, 52 S.Ct. 460, 463–64, 76 L.Ed. 999 (1932), cannot apply here or the court would run afoul of the state's sovereign immunity. This particular legal fiction has ended.

CONCLUSION

*No. 82–3449*

The funding provision, purporting to bind the state, is without authority and in excess

of what was required to alleviate violations of federal law. It is therefore unenforceable.

■■ Modifications of consent decrees are reversible only for abuse of discretion. *Safe Flight Instrument Corp. v. United Control Corp.,* 576 F.2d 1340, 1343 (9th Cir. 1978). There was none here. The funding provision was not intended to bind the individuals, but rather the state, something it could not do under the Eleventh Amendment. Vacating it was appropriate.

Affirmed.

*No. 81–3211*

Our decision in the original appeal, 661 F.2d 943 (9th Cir.1981), remanded only the issue of the funding provision. We must still address the remainder of the district court's first decision, relieving defendants of the obligation to prepare studies or plans, terminating jurisdiction, and dismissing the case.

We realize that a decree does not have a "purpose." Rather, the parties have conflicting purposes and the decree represents a negotiated compromise of these. *United States v. Motor Vehicle Manufacturers Ass'n, supra,* 643 F.2d at 650 (citing *United States v. Armour & Co., supra,* 402 U.S. at 681, 91 S.Ct. at 1757). However, the finding that defendants had complied with the library and paralegal provisions of the decrees was not clearly erroneous. These provisions did not require further enforcement.

The plan and study requirements were not part of the decrees but of a contract to implement the legal services funding provision, which we held above was properly vacated. In any event, defendants submitted a plan and study. PLSO may not be heard to complain, as it breached its duty to participate.

Affirmed.