Evan Arthur HOOK, et al.,
Plaintiffs–Appellees,

v.

STATE OF ARIZONA, DEPARTMENT OF CORRECTIONS; Samuel Lewis, individually and in his capacity as director of the Department of Corrections; Defendants–Appellants.

No. 91–15052.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 12, 1992.

Decided July 23, 1992.

As Amended Sept. 1, 1992.

Rebecca Berch, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellants.

Scott F. Frerichs, Treon, Strick, Lucia & Aguirre, Phoenix, Ariz., for plaintiffs-appellees.

Before: HALL and WIGGINS, Circuit Judges, and KEEP *, Chief District Judge.

WIGGINS, Circuit Judge:

## OVERVIEW

Defendants/Appellants, including the Arizona Department of Corrections, appeal the district court's grant of an injunction against the enforcement of certain prison regulations. Plaintiffs/Appellees, current inmates, argue that the injunction was appropriate because the regulations conflict with an earlier consent decree between the Arizona Department of Corrections and certain named inmates. The Department of Corrections contends that the injunction is improper because (1) the Department is no longer bound by the earlier consent decree and (2) the current inmates lack standing to enforce the consent decree. This court has jurisdiction over the timely appeal pursuant to 28 U.S.C. § 1292(a)(1) (1988).

## BACKGROUND

In 1973, Hook and ten other inmates filed a suit alleging violations of their First and Fourteenth Amendment rights in conjunction with the Department of Correction's mail policies. This suit was never certified as a class action. Among other things, the inmates claimed they had constitutional rights to subscribe to Playboy, to send outgoing letters to public judicial officers, to send letters to persons not on approved mailing lists, and to receive letters from more than ten persons. The inmates' complaint did not specifically mention the right to receive Christmas packages. Indeed, the complaint only included Christmas packages to the extent it could be construed to address prison mail regulations in general.

In resolving the dispute, the Department of Corrections presented a comprehensive scheme of mail regulations as a proposed consent decree. This comprehensive scheme included a provision allowing inmates to receive three twenty-five pound Christmas food packages. The inmates and the court accepted these regulations as the consent decree, and the case was closed. In 1974, the consent decree was amended to allow a minor change unrelated to this case. Since that 1974 modification, the case remained closed until the present dispute.

In 1982, nine years after the entry of the original consent decree, the Department wrote to the district court and informed the court of its "intention to adopt its new [prison] mail regulations in compliance with Arizona's Administrative Procedure Act ... rather than attempt[ ] to further amend the judgment entered long ago in *Hooks* [sic]." The attorneys representing the inmates also received a copy of this letter. The district court responded in a brief letter:

> I have no objections to the procedure outlined in your letter of June 24, 1982. It seems to me to be particularly appropriate since the stipulated judgment in this case was entered almost ten years ago.
>
> I don't, of course, express any comment on the new proposals, and would only do so if there were a case before me.

The Department then made several changes in the mail regulations between 1982 and 1987. Interpreting the district court's letter as permission to disregard the consent decree, the Department never attempted to amend or modify the consent decree. In 1990, the Department passed new regulations governing Christmas packages, and 265 inmates brought an action to enforce the 1973 consent decree. None of the 265 inmates, the present plaintiffs/appellees, was a party to the earlier consent decree.

On December 6, 1990, the district court conducted a hearing on the inmates' motions for contempt and injunctive relief. The court ruled that, although changes in the mail regulations might be in order, the proper way to address a direct conflict with

---

* Hon. Judith N. Keep, Chief United States District Judge for the Southern District of California, sitting by designation.

the 1973 consent decree is a motion under Fed.R.Civ.P. 60(b): "[I]f there is a problem with any decree ever entered by this Court dealing with the prisons, the way in which you resolve it is you bring a petition before the Court explaining why in law or fact or both there should be a change." The court rejected the Department's arguments that the court's 1982 letter excused the Department from further compliance with the decree. The court also ruled that the 265 inmates had standing to enforce the 1973 consent decree. Thus, the court enjoined the Department "from making any changes in the implementation of Christmas food packages received pursuant to the Consent Decree approved by this court ... unless this court issues an order otherwise."

## DISCUSSION

■ A district court retains jurisdiction to enforce its judgments, including consent decrees. *City of Las Vegas, Nev. v. Clark County, Nev.*, 755 F.2d 697, 701 (9th Cir. 1985). Because the inmates allege a violation of the consent decree, the district court had jurisdiction. *Id.* The grant of an injunction is discretionary and is normally reviewed for an abuse of discretion or application of erroneous legal principles. *Tollis, Inc. v. San Bernardino County*, 827 F.2d 1329, 1331 (9th Cir.1987). However, the two primary issues presented in this case—(1) standing and (2) the procedure for modifying or vacating a consent decree—are issues of law that must be reviewed de novo.

### I. Standing

Whether the 265 inmates have standing to enforce the 1973 consent decree is an issue of law that is reviewed de novo. *EMI, Ltd. v. Bennet*, 738 F.2d 994, 996 (9th Cir.) (standing is a jurisdictional question that is reviewed de novo), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 508 (1984). The Department of Corrections argues that only parties to a consent decree have standing to bring an action to enforce the decree. Because neither the 1973 suit nor the present action was certified as a class action, and because none of the 265

plaintiffs in this action was a party to the 1973 suit, the Department asserts that the plaintiffs have no standing to enforce the consent decree.

■ We begin our analysis of this issue by noting that consent decrees are essentially contractual agreements that are given the status of a judicial decree. Contract principles are generally applicable in our analysis of consent decrees, provided contract analysis does not undermine the judicial character of the decree. *See, e.g., Thompson v. Enomoto*, 915 F.2d 1383, 1388 (9th Cir.1990), *cert. denied*, — U.S. ——, 112 S.Ct. 965, 117 L.Ed.2d 131 (1992). Key to the present case, consent decrees are construed as contracts for purposes of enforcement. *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975); *see also Martin v. Wilks*, 490 U.S. 755, 788 n. 27, 109 S.Ct. 2180, 2198–99 n. 27, 104 L.Ed.2d 835 (1989) (Stevens, J., dissenting).

■ Therefore, enforcement of consent decrees is governed by the established contract principle that non-parties, as intended third party ·beneficiaries, may enforce an agreement. *See Restatement (Second) of Contracts* § 304 & cmt. a-b (1981) (parties to an agreement have the power to create enforcement rights in non-parties). This principle is consistent with the Federal Rules of Civil Procedure: "When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party...." Fed.R.Civ.P. 71; *see Berger v. Heckler*, 771 F.2d 1556, 1565–66 (2d Cir. 1985); *Lavapies v. Bowen*, 687 F.Supp. 1193, 1207 (S.D.Ohio 1988) ("Under Rule 71, a non-party who establishes standing to proceed as a third-party beneficiary of a settlement agreement or consent decree may pursue enforcement of that agreement or decree.") (citations omitted). In short, intended third party beneficiaries of a consent decree have standing to enforce the decree.

The Department asserts that even *intended* third party beneficiaries have no standing to enforce a consent decree. The

Department's arguments stem from a broad reading of Supreme Court language on standing that would prohibit all third party beneficiaries of a consent decree, even intended beneficiaries: "[A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 750, 95 S.Ct. 1917, 1932, 44 L.Ed.2d 539 (1975).

However, a more thorough analysis reveals that the standing rule from *Blue Chip Stamps* prohibits only *incidental* third party beneficiaries from suing to enforce a consent decree. In *Blue Chip Stamps,* the government had been the plaintiff that compelled the earlier consent decree, and the private beneficiaries of the decree later sought to bring an action under the decree. At the time the government entered into the consent decree, it was well-settled that "[o]nly the Government can seek enforcement of its consent decrees." *Dahl, Inc. v. Roy Cooper Co.,* 448 F.2d 17, 20 (9th Cir.1971). Because the Government knew at the time it entered the consent decree that the private beneficiaries it intended to benefit would be unable to bring actions to enforce the consent decree, the private beneficiaries were only incidental third party beneficiaries.

This reading of *Blue Chip Stamps* is consistent with the principle that "[i]n construing consent decrees, courts use contract principles." *Thompson v. Enomoto,* 915 F.2d at 1388. In contract law, third party beneficiaries of the government's rights under a contract are normally assumed to be only incidental beneficiaries and are precluded from enforcing the contract absent a clear expression of a different intent. *See Restatement (Second) of Contracts* § 313(2) cmt. a (1981) ("Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested."). Under contract principles, the private parties seeking to enforce the government's rights in *Blue Chip Stamps* were incidental third party beneficiaries. The holding in *Blue Chip Stamps* is thus limited to incidental beneficiaries or beneficiaries of consent decrees where the government was the plaintiff; it does not apply to intended third party beneficiaries.

Moreover, if *Blue Chip Stamps* were read broadly to preclude even intended third party beneficiaries from enforcing a consent decree, it would create a direct conflict with Rule 71. Rule 71 clearly allows intended third party beneficiaries to enforce consent decrees, and *Blue Chip Stamps* should be read to avoid eviscerating Rule 71. *See Berger v. Heckler,* 771 F.2d at 1565–66 (discussing *Lasky v. Quinlan,* 558 F.2d 1133, 1136–37 (2d Cir.1977)).

The Department of Corrections does not dispute that the inmates in this case are intended third party beneficiaries under the 1973 consent decree. Even a cursory review of the consent decree shows that its purpose is to benefit all inmates and not just the named plaintiffs. The decree lists "inmates" and "residents" as the intended beneficiaries of the consent decree. Thus, the 265 inmates are intended third party beneficiaries that have standing to enforce the rights of the inmates under the consent decree.

## II. Consent Decrees and Rule 60(b)

The Department argues that it was not bound by the 1973 consent decree in issuing new Christmas package regulations. According to the Department, the consent decree was inapplicable because (1) the district court had agreed that the Department is no longer bound by the decree, (2) the constitutional law underlying the consent decree had changed, leaving the consent decree overly broad and violative of the Eleventh Amendment, and (3) the consent decree was also overly broad given that Christmas packages were not really an issue in the 1973 consent decree litigation. The inmates contend that the Department is bound by the Christmas package provision in the consent decree and that the Department must obey the consent decree until it succeeds on a motion ·to modify or

vacate the consent decree under Fed. R.Civ.P. 60(b).

Whether the Department may disobey a consent decree without bringing a Rule (60)(b) motion when the constitutional law underlying the consent decree no longer appears to support the decree is an issue of law. Thus, we review this question de novo. *United States v. McConney,* 728 F.2d 1195, 1201–04 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ The Department's first argument is easily dismissed. Although the district court's informal letter in 1982 may be construed as permission to promulgate new prison regulations without modifying the consent decree, it cannot be read as permission to promulgate new regulations which directly violate the consent decree. More importantly, even if the 1982 letter could be read as permission to ignore the consent decree completely, it would have no legal effect.

As the letter itself indicates, the district court could not issue a binding legal opinion unless there was a justiciable case or controversy before it: "I don't, of course, express any comment on the new proposals, and would only do so if there were a case before me." The Department of Corrections should have known that the letter had no legal effect because there was no justiciable controversy before the court in 1982. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937) (U.S. Const. art. III, § 2 requires a justiciable case or controversy as opposed to an abstract or hypothetical dispute). What the Department sought and received in 1982 was an informal, irrelevant, and invalid advisory opinion. The Department should have sought an order to vacate or modify the consent decree under Fed.R.Civ.P. 60(b)(5)–(6).

The proper procedure for seeking relief from a consent decree is a Rule 60(b) motion.

There is no suggestion in these [institutional reform] cases that a consent decree is not subject to Rule 60(b). A consent decree no doubt embodies an agreement of the parties and thus in some respects is contractual in nature. But it is an agreement that the parties desire and expect will be reflected in and be enforceable as a judicial decree that is subject to the rules generally applicable to other judgments and decrees.

*Rufo v. Inmates of the Suffolk County Jail,* — U.S. —, 112 S.Ct. 748, 757, 116 L.Ed.2d 867 (1992); *see also Twentieth Century-Fox Film Corp. v. Dunnahoo,* 637 F.2d 1338, 1340 (9th Cir.1981) (relief from any provision of a consent decree "must be considered under Rule 60 of the Federal Rules of Civil Procedure").

■ The Department's second argument—that the consent decree can be ignored because it is overly broad and violates the Eleventh Amendment to the United States Constitution—is also inapposite. Although the Eleventh Amendment does prohibit overly broad consent decrees that fail to vindicate federal rights, *see Washington v. Penwell,* 700 F.2d 570, 574–75 (9th Cir.1983), we cannot address this issue because the Department failed to follow the proper procedures in seeking relief from the consent decree.

■ The Department is correct that there is no constitutional right to three Christmas packages underlying the Christmas package provision in the consent decree. *See Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). Given *Bell* and the legitimate needs of the Department, the Department may have a strong argument that the 1973 consent decree is overly broad and should be modified or vacated under a Rule 60(b) motion.[1] However, the Department cannot simply ignore the consent decree because it believes the decree is overly broad. As explained above, the proper procedure for seeking relief from a consent decree is a Rule 60(b) motion. Indeed, *Washington v. Penwell, supra,* cited by the Department for the proposition that an overly broad consent decree violates the Eleventh Amendment, is a Rule 60(b) case.

The district court acknowledged that the Department has a strong argument for

---

**1.** We do not express any opinion on the merits of the Department's arguments.

modifying the consent decree, but it insisted that the Department follow the proper procedure under Rule 60(b). "To say that it can't be changed is also absurd. But the way you change it is not ... by ignoring a decree that's in effect or anything of that sort." The district court was correct in requiring the Department to comply with the Federal Rules of Civil Procedure, and the Department is bound by the consent decree until the district court issues an order otherwise under Rule 60(b).

Although the Department concedes that the record is rife with procedural mistakes or irregularities, it argues that this court should also ignore the proper procedures because the Eleventh Amendment is a jurisdictional bar that may be raised for the first time on appeal. This argument fails because it overlooks the fact that this is not an appeal of the 1973 consent decree. The consent decree is a final, binding judgment that was never appealed. Therefore, we refrain from addressing the Department's Eleventh Amendment argument until it has been raised in a Rule 60(b)(5)–(6) motion. Our restraint is supported by policies favoring the finality and binding effect of judgments and requiring the party seeking relief from a final judgment to bear the burden of modifying it. "[A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo*, 112 S.Ct. at 760. This burden rests on the Department and cannot be alleviated by ignoring the consent decree and compelling the inmates to undertake litigation to enforce the decree.

The Department's third argument is that the consent decree is overly broad because Christmas packages were not an issue in the 1973 litigation. This argument also fails for the reasons discussed above. The Department may be correct that the Christmas package provision of the decree should not have been entered in the first place.

However, the fault lies with the Department for including the provision as part of the consent decree. Because the Christmas package provision became part of the consent decree, a Rule 60(b) motion is necessary to remove that provision. As the district court held, the proper approach to this problem is to bring a Rule 60(b) motion; the Department cannot simply disregard the consent decree.

## CONCLUSION

The inmates have standing to enforce the consent decree as intended third party beneficiaries to the 1973 consent decree. The remainder of the Department's arguments fail because they were not raised in a Rule 60(b) motion. Even if the law underlying the consent decree no longer appears to support the decree, a party cannot disobey the decree without bringing a Rule (60)(b) motion to modify or vacate the decree. Therefore, we AFFIRM the judgment of the district court.[2]

---

**2.** We also award the inmates attorneys' fees incurred pursuant to this appeal. The Department could have avoided this appeal by simply bringing a Rule 60(b) motion in the district court. The Department's refusal to comply with the Federal Rules of Civil Procedure after the district court made it clear that a Rule 60(b) motion was necessary can only be characterized as frivolous. Thus, attorneys' fees are warranted under Fed.R.App.P. 38. Moreover, because the consent decree was entered to vindicate federal rights and to remedy alleged violations of 42 U.S.C. § 1983 (1988), the current action to enforce the consent decree falls within 42 U.S.C. § 1988 (1988).